## FILMORE W. WILLSEY *v.* EVERETT R. NEWLON, TRUSTEE.

[No. 2-173A13. Filed August 29, 1974.]

*Filmore W. Willsey, Willsey & Willsey,* of Indianapolis, *John P. Price, Bingham, Summers, Welsh & Spilman,* of Indianapolis, for appellant.

*Elmon M. Williams, Williams, Van Valer & Wicker,* of Greenwood, *William K. Byrum, Fulmer, Byrum & Gagnon,* of Indianapolis, for appellee.

WHITE, J.—In a declaratory judgment action brought by the township trustee (Newlon) against the township justice of the peace (Willsey) it was held that the justice had vacated his office by removing his residence from the township. Willsey's appeal makes two basic contentions:

(1) that there is no legal requirement that a justice of the peace reside in the township, and

(2) the evidence is insufficient to sustain the finding that he removed his residence from the township.

## I.

Article VI, § 6, of the Constitution of Indiana, provides:

"All county, township, and town officers, shall reside within their respective counties, townships, and towns; and shall keep their respective offices at such places therein, and perform such duties, as may be directed by law."

Appellee contends that a justice of the peace is a *township* officer within the meaning of that provision. Willsey contends a justice of the peace is a *judicial* officer and therefore not a township officer, within the purview of Article VI of the Constitution, since to so hold would violate Article III, section 1, which provides that "no person, charged with official duties under one of these departments [legislative, executive, and judicial], shall exercise any of the *functions* of another, except in this constitution expressly provided." (Emphasis added.) His argument is that since Article III separates the powers of government "the provisions relative to the administrative officers covered in Administrative Article 6 cannot apply to a Judicial office of this State."

Whatever may be said of the logic of that reasoning, it has repeatedly been held that the separation of powers doctrine of Article III has no application at the local level. *Mogilner* v. *Metropolitan Plan Commission of Marion County* (1957), 236 Ind. 298, 318, 140 N.E.2d 220; *Baltimore & Ohio Railroad Company* v. *Town of Whiting* (1903), 161 Ind. 228, 233, 68 N.E. 266.

In the last cited case a statute had conferred on the town clerk all the powers of a justice of the peace, required him to hold court every day except Sunday and gave him exclusive jurisdiction of town ordinance violations. Rejecting the contention that conferring judicial powers on an administrative officer violated Article III, section 1, Constitution of Indiana, the court said: "This provision of the Constitution relates solely to the state government and officers charged with duties under one of the separate departments of the State, and not to municipal governments and officers." (161 Ind. at 233.)

*Mogilner, supra,* held it was not applicable to a county-wide administrative board (a metropolitan board of zoning appeals) which was given, by statute, the judicial power to issue restraining orders.

Willsey acknowledges that *dicta* in four cases states that justices of the peace are township officers. *Mills* v. *State* (1858), 10 Ind. 114; *Town of Spencer* v. *Cline* (1867), 28 Ind. 51; *In re Petition of Justice of the Peace Association of Indiana* (1958), 237 Ind. 436, 147 N.E.2d 16; *Feibleman* v. *State* (1884), 98 Ind. 516.

In the last cited case a statute required justices of the peace elected for any incorporated city or town to reside and hold court therein. After declaring the statute invalid for other reasons, the court quoted Article VI, section 6, of the Constitution of Indiana and concluded that: "While it is competent for the Legislature to prescribe where township officers shall keep their offices, it probably may not circumscribe the place of their residence to limits narrower than the boundaries of their townships." (98 Ind. at 522.)

Judge Emmert quoted and relied on that *dictum* in holding in *In re Petition of Justices, etc., supra,* that the Legislature could not require justices of the peace to be attorneys or to have passed an examination prescribed by the Supreme Court. He said:

"A justice of the peace is a township officer, and § 6 of Article 6 provides, 'All county, township and town officers, shall reside within their respective counties, townships, and towns, and shall keep their respective offices at such places therein, and perform such duties as may be directed by law.'" (237 Ind. at 440.)

*  *  *

"That part of § 7 of Ch. 322 of the 1957 Acts which purports to provide additional qualifications for eligibility for justices of the peace is unconstitutional and void." (Ibid. at 442.)

The *dicta* of those cases is sufficiently persuasive to convince us that a justice of the peace under Article VII, § 14 of

the Constitution of Indiana prior to the effective date (January 1, 1972) of the amendment adopted November 3, 1970, was a township officer.

The new Article VII makes no mention of Justices of the Peace but the General Assembly in its 1971 sessions, by Public Law No. 441, SECTION 1, § 2, provided: "All offices of justice of the peace in existence on December 31, 1971, and *all laws in effect on said date* or thereafter in effect, relating to said offices . . . *shall continue to exist and be in effect* until January 1, 1976." (Our emphasis.) Willsey ignores the emphasized portions of that section in arguing that "since the amendment of 1970 and the legislature's re-creation of the Justice of the Peace Courts in the State, that justices are no longer Constitutional Officers, therefore, not subject to the prior constitutional requirements that existed." There is nothing in Article VI, § 6 (quoted above) which suggests that it applies only to constitutionally created offices, nor does Willsey cite any authority to that effect. *Relender* v. *State* (1898), 149 Ind. 283, 49 N.E. 30, applied its residence requirement to "the office of county commissioner [which] is not a constitutional office and never has been." *State* v. *Goldthait* (1909), 172 Ind. 210, 216, 87 N.E. 133.

## II.

Willsey's contention that the evidence is insufficient to sustain the finding that he removed his residence from the township involves no dispute as to the evidentiary facts. It concerns primarily the meaning of "reside", as that word is used in Article VI, section 6's requirement that "[a]ll township . . . officers, shall reside within their respective . . . townships . . .", and whether the evidence supports the inference drawn by the trial court that Willsey had ceased to reside in Perry Township.

At the time of his original appointment and his subsequent election Willsey and his wife and children lived together in a house he owned in the township, Perry Township

of Marion County. He also maintained a law office in that township and, after his appointment, established his justice of the peace office in the township. He also owned other real estate in the township but maintained no living quarters other than the one family residence. After he entered upon his elected term of office he and his family moved their living quarters, or "family residence", to a house he had built on land he owned in an adjoining township in Johnson County where his children then began to attend school. He continued to maintain his judicial and professional office in Perry Township where he spent better than seventy per cent of his time, performing his official duties in a wholly satisfactory manner. He also maintained his voter registration in Perry Township and considered himself a "legal resident", but he sold his Perry Township house (taking a mortgage on it, however) and the purchasers are now in exclusive possession. Since moving his wife and children to Johnson County he has spent his nights there with them except when he occasionally stayed overnight at his parents' home in Perry Township or in a part of the building where his law office is located. The building address (4040 S. Meridian Street) is his residence address "for purposes of this question", but "I live at my family residence and I reside for purposes of that part at 6187 Maple Hall Drive" (his Johnson County address).

Two Indiana cases which speak to the residence requirements of Article VI, section 6, say merely that the officer "is bound . . . not simply to be a resident of the county in the general sense of that term, but he is bound to 'reside' in the county. . . ." *State* v. *Allen* (1863), 21 Ind. 516, 521 (County Auditor) ; *Relender* v. *State* (1897), 149 Ind. 283, 288, 49 N.E. 30 (County Commissioner).

A third case, *Yonkey* v. *State* (1866), 27 Ind. 236, throws a little more light on its meaning. Yonkey was the Clinton County Recorder who resided with his family in a rented house in Frankfort, the county seat. During his term he went

twice to Washington, D.C., to serve as an assistant door-keeper in one of the houses of Congress, but his family continued to reside in the same house in Frankfort. Yonkey stayed there with them between his Washington sojourns. In reversing a judgment of ouster on an information in the form of *quo warranto,* the court said:

"As a general rule, *where a man is the head of the family and is a house keeper, the domicil of the family is presumed to be his legal place of residence.* It requires an intention in order to change the domicil, and therefore if a person leaves his place of residence temporarily, on business or otherwise, but with the intention of returning, he does not thereby lose his domicil, as he could not by such absence acquire one elsewhere. See Bouvier's Law Dic., title 'Domicil,' and authorities cited. Here, *Yonkey* resided with his family in *Clinton* county, and his family continued to reside there. It was his residence, and in going to *Washington* it is evident he did not intend to lose his residence in *Clinton* county or change it to *Washington.* He therefore continued to reside in *Clinton* county." (27 Ind. at 245. Our emphasis.)

Were *Yonkey* being written today, the result would and should, we believe, be the same, but the words might be different. Nowadays we would expect the court to speak in terms of what may, or may not, be *inferred,* instead of what is *presumed,* when certain evidentiary facts are shown to exist.[1] In modern terms, then, the evidence in *Yonkey* was insufficient to support the inference that Yonkey had ceased to reside in Clinton County. Since his family continued to reside there and his absence was shown to be only temporary and with intent to return, the only *permissible inference* was that he continued to reside where his family resided.[2] Such an inference is:

". . . placed in the scales to be weighed with any and all explanations offered by the defendant. The inference . . . or as sometimes stated the 'presumption' does not vanish

1. See the discussion and cases cited in 12 IND. LAW ENCYC. 434, Evidence § 21, and its 1973 pocket part.

2. In a case involving *res ipsa loquitur,* the Appellate Court noted "that there has been some confusion in the earlier cases as to whether a presumption of negligence or a permissive inference of negligence has been raised" and concluded that it was the latter. *Deming Hotel Company* v. *Prox* (1968), 142 Ind. App. 603, 613, 236 N.E.2d 613.

when the defendant comes forward with an explanation but on the contrary stays in the case to be considered with all other evidence by the triers of the fact. The weight to be given this inference and its relationship to all the other evidence is solely for those determining the facts." *New York, Chicago, St. Louis R.R. Co.* v. *Henderson* (1957), 237 Ind. 456, 466, 146 N.E.2d 531.

In *Yonkey* there was apparently no effort made to rebut the presumption (or explain away the inference) that Yonkey resided with his family in Frankfort, and therefore the "presumption" prevailed. Willsey, however, tried to rebut the presumption, or to explain away the inference, when he stated that his move to Johnson County was only temporary for the purpose of "promoting that piece of property and my intent is not to remain there; my intent is to come back to this area. . . ." Likewise when he testified that he considered himself still a resident of, and still a registered voter in, Perry Township and that he spent seventy percent of his time there and often stayed overnight in Perry Township. Whether that explanation carried sufficient weight to overcome the inference, or presumption, arising out of the removal of the family residence from Perry Township, was solely for the trial judge to determine. His determination is sustained by the evidence and is not contrary to law.

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 316 N.E.2d 390.