ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General

Stephen R. Creason
Chief Counsel

Kyle Hunter
Larry D. Allen
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Clay M. Patton
Osan & Patton LLP
Valparaiso, Indiana



FILED
Mar 22 2016, 10:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 45S00-1409-PL-587

STATE OF INDIANA,

*Appellant (Defendant below),*

v.

JOHN BUNCICH, IN HIS CAPACITY AS
CHAIRMAN OF THE LAKE COUNTY
DEMOCRATIC CENTRAL COMMITTEE,
CHRISTINE M. RUSSELL, INDIVIDUALLY,
RANDOLPH PALMATEER, INDIVIDUALLY,
RANDY DeSALVO, INDIVIDUALLY, HERBERT
SMITH, JR., INDIVIDUALLY, CATHLINE
NAVEJAS, INDIVIDUALLY, EDWARDO D.
BANDA, SR., INDIVIDUALLY, AND SCOTT M.
RAKOS, INDIVIDUALLY,

*Appellees (Plaintiffs below).*

Appeal from the Lake County Circuit Court, No. 45C01-1407-PL-84
The Honorable George C. Paras, Judge

On Direct Appeal

**March 22, 2016**

**Massa, Justice.**

Indiana Code section 3-11-1.5-3.4 created a Small Precinct Committee in Lake County and directed it to identify precincts with fewer than 500 active voters that may be amenable to consolidation, a measure intended to reduce election costs in a county that is home to over 15% of our state's small precincts. Implementing such a consolidation plan, however, could jeopardize the offices of some precinct committeepersons, who brought suit challenging the Statute. We are asked to decide whether this piece of legislation is contrary to our Indiana Constitution. Finding it is neither an impermissible special law nor a violation of our separation of powers doctrine, we determine the Statute is constitutionally sound, and accordingly, we reverse the trial court.

**Facts and Procedural History**

The Lake County Board of Elections and Registration is a statutorily created body, unique among Indiana's counties,[1] that is responsible for organizing elections there. Ind. Code § 3-6-5.2-6 (2005). The five-member Board is comprised of the circuit court clerk plus two members of each major political party, appointed by their respective county chairmen. Ind. Code § 3-6-5.2-4. The day-to-day operations are the responsibility of the director and assistant director of the Board, also appointed by the county chairmen. Ind. Code § 3-6-5.2-7.

---

[1] The statutory chapter creating the Board applies only to a county with a population between 400,000 and 700,000. Ind. Code § 3-6-5.2-1. Since its enactment in 1993 and to this day, only Lake County falls within that range.

In March of 2014, the General Assembly enacted Indiana Code section 3-11-1.5-3.4 (Supp. 2015) ("the Statute"), which similarly applies only to Lake County.[2] 2014 Ind. Legis. Serv. P.L. 64-2014 (West). The Statute aimed to reduce the cost of election administration by consolidating small precincts, defined as those with 500 active voters or fewer. Ind. Code § 3-11-1.5-3.4(e). At the time of the Statute's enactment, 130 of Lake County's 525 precincts qualified as small, more than double that of any other county. Indeed, the next highest number came from Allen County with 57 small precincts out of 338; Marion County had only 19 small precincts of 600.

To address this disparity, the Statute mandated the creation of another body in Lake County, called a "Small Precinct Committee," consisting of the five Board members plus any other individuals it unanimously appoints. Ind. Code § 3-11-1.5-3.4(c), (d). The Committee was directed to (1) identify the County's small precincts, (2) determine if any adjoining precincts could be combined consistent with precinct boundary law, and (3) estimate the potential savings that would result from consolidation. Ind. Code § 3-11-1.5-3.4(e). Once the Committee's work was complete, the Statute provided that the Board would adopt a proposed order "implementing the findings," which would be filed with the election division and—provided there were no objections—would take effect at the start of 2015. Ind. Code § 3-11-1.5-3.4(f), (g).

As required by the Statute, the Board duly created the Small Precinct Committee in June of 2014; it consisted of the five Board members, along with Director Michelle Fajman and Assistant Director Patrick Gabrione. The Committee determined there were 76 small precincts amenable to consolidation, which would save the county around $43,000 per election, $87,000 per election year, and $435,000 over the next five years. Through the course of its study, the Committee also discovered there were some precincts with more than 1200 voters, in violation of

---

[2] The Statute applies only to a county that has a board of elections and registration pursuant to Indiana Code chapter 3-6-5.2, which of course is limited to Lake County. Ind. Code § 3-11-1.5-3.4(a).

state law and in need of being addressed. Of course, consolidation would mean that some committeepersons could lose their office before their elected term expired.

Before the Board met to act upon the Committee's plan, the Lake County Democratic Central Committee and five Democratic precinct committeepersons (collectively, "Buncich") sought declaratory judgment and an injunction, asserting the Statute was unconstitutional as special legislation under Article 4, Section 23 of the Indiana Constitution and violated the separation of powers doctrine recognized in Article 3, Section 1 because certain committeepersons would be subject to removal just months after being elected. The State opposed, arguing any harm was speculative since the Statute merely required formation of a committee and completion of a study; if Buncich objected to the plan eventually adopted by the Board, whatever it may be, he could seek review from the Indiana Election Division.

At the preliminary injunction hearing, without prior notice to the State, Buncich moved to consolidate with the merits of the case. The State objected, stating such a request would be premature, as more statistical analysis may be needed. The trial court reserved a ruling on the motion, wanting to wait and see what evidence would be presented. At the hearing, both sides relied mostly on the same statewide precinct data from July of 2014,[3] which shows that of Lake County's 520 precincts, 174 of them, or 33.46%, are small precincts. And, of the 5324 precincts statewide, 20.83% are small.

The parties' respective analyses of those numbers, however, tell two very different stories about Lake County. As Buncich points out, nearly all—89 of 92—Indiana counties have small precincts, and presumably, all counties could benefit from reduced election costs. Moreover,

---

[3] This second data set was produced just after the primary elections. Due to low participation, many voters became "inactive," leading to an increased number of small precincts in Lake County and around the state. Oral Arg. at 7:10–8:20.

4

Lake County is not alone in its proportion of small precincts: in 27 other counties, small precincts account for 33% or more of the total precincts. The State responds by distinguishing Lake County based on its relative size, indicating it makes sense for smaller, more rural counties to have a larger proportion of small precincts "given the nature of population distribution." Tr. at 25. But Lake County is a larger, predominantly urban county with "an inordinate number of [small] precincts given its relatively dense population." App. at 35. More specifically, of the 27 other counties with 33% or more small precincts, all but one have fewer than 40 total precincts; in contrast, Lake County has 520 total precincts, over seven times more than the next highest county in that group.[4] Among the four most populous counties, Lake County has more small precincts than Marion, Allen, and Hamilton combined.[5] And, of all 92 counties, it has more than twice as many small precincts as the next highest county, accounting for over 15% of Indiana's small precincts.

Buncich also presented evidence at the hearing that the responsibilities of precinct committeepersons include filling vacancies, should they occur, in elected positions. And several precinct committeepersons—who had just been elected in May of 2014—testified that they are "at risk" of losing their positions, although the parties stipulated that the Board has not yet made a decision on which precincts are to be consolidated and which committeepersons eliminated. Tr. at 39, 42, 46–48, 50.

After taking the matter under advisement, the trial court granted Buncich's motion to consolidate a ruling on the merits. Finding nearly all Indiana counties have small precincts and have an interest in consolidating precincts to realize cost savings, the trial court concluded there are "no unique circumstances that rationally justify the application of the Statute solely to Lake

---

[4] The next highest, Kosciusko County, has 23 small precincts out of 69 total precincts.

[5] Marion has 65 small precincts, Allen 81, and Hamilton 28, compared to Lake County's 174.

County and not to all of Indiana's remaining 91 counties." App. at 145. In addition to ruling the Statute violates Article 4, Section 23 as impermissible special legislation, the trial court determined its impact on precinct committeepersons violates separation of powers principles, embodied in Article 3, Section 1.

The State filed this direct appeal, over which this Court has jurisdiction pursuant to Indiana Appellate Rule 4(A)(1)(b).

## Standard of Review

We review the constitutionality of an Indiana statute without deferring to the trial court's ruling. Zoeller v. Sweeney, 19 N.E.3d 749, 751 (Ind. 2014). Instead, the statute comes before us afresh, "clothed with the presumption of constitutionality until clearly overcome by a contrary showing." Id. (quoting Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996)). We resolve all doubts in favor of the legislature, id.; thus, if there are multiple interpretations, we will choose the path that upholds the statute. Baldwin v. Reagan, 715 N.E.2d 332, 338 (Ind. 1999). It is the party seeking to strike down the statute who bears the burden of proof, and that burden is particularly heavy where, as here, he challenges the statute on its face: the claimant must show "no set of circumstances under which the statute can be constitutionally applied." Id. at 337.

## The Statute Is Constitutionally Permissible Special Legislation.

In Indiana, "where a general law *can* be made applicable, all laws shall be general, and of uniform operation throughout the State." Ind. Const. art. 4, § 23 (emphasis added). The purpose of this provision is to prevent the legislature from providing a benefit to or imposing a burden on one locality and not others, as allowing such practices would encourage logrolling and result in an irregular system of laws. Mun. City of S. Bend v. Kimsey, 781 N.E.2d 683, 685–86 (Ind. 2003). Of course, as Article 4, Section 23 implies, while our drafters expressed a

6

preference for general laws, there are cases in which a general law *cannot* be made applicable statewide. Ind. Gaming Comm'n v. Moseley, 643 N.E.2d 296, 300 (Ind. 1994). In instances where a general law would be "inoperative in portions of the state" or "injurious and unjust," a special local law is necessary. Kimsey, 781 N.E.2d at 692 (quoting Gentile v. State, 29 Ind. 409, 411–12 (1868)). Our Constitution thus requires we engage in two analytical steps: first, we determine whether the law is general or special; second, if it is a general law, we determine whether it is generally applied, and if it is a special law, we determine whether it is constitutionally permissible. Williams v. State, 724 N.E.2d 1070, 1085 (Ind. 2000). "If the subject matter of an act is not amenable to a general law of uniform operation throughout the State," it is constitutionally permissible. Id. at 1085–86.

Both sides agree the Statute here is special because it is directed to Lake County alone.[6] The question we must address, then, is whether the Statute is nevertheless permissible because it cannot "be made applicable," Ind. Const. art. 4, § 23, since the "relevant traits of the affected area are distinctive such that the law's application elsewhere has no effect." Kimsey, 781 N.E.2d at 692. In other words, there exist "inherent characteristics of the affected locale that justify local legislation." Id. The justifying characteristic need not be connected to the statutorily defined classification, so long as the class affected is limited to those that possess the justifying characteristic. Id. ("Hoovler made clear that a defining characteristic (a population category) that is theoretically unrelated to the justifying characteristic (Superfund liability) is nevertheless permissible if, under the facts as they are at the time of passage, only justified areas are defined into the class." (citing State v. Hoovler, 668 N.E.2d 1229 (Ind. 1996)). In considering this question, we look to "local facts," id.: "If the affected county reflects unique circumstances that

---

[6] Although at one time our courts accepted a population parameter as indicative of a statute's general nature, it is now well-settled that if a piece of legislation distinguishes and identifies a locality—whether by name or some other defining unique characteristic—it is a special law. Kimsey, 781 N.E.2d at 692.

7

rationally justify the legislation, then a general law is not 'applicable' elsewhere and Section 23 is not violated." State ex rel. Atty. Gen. v. Lake Super. Ct., 820 N.E.2d 1240, 1249 (Ind. 2005).

We have, on several occasions, found unique circumstances warranting differential legislative treatment. See, e.g., Lake Super. Ct., 820 N.E.2d at 1250–51 (upholding tax reassessment statute based on "the long history of systematic underassessment in parts of Lake County"); Hoovler, 668 N.E.2d at 1233–35 (upholding statute allowing Tippecanoe County to increase certain taxes because it was the only county subject to Superfund liability under federal environmental laws); Moseley, 643 N.E.2d at 301–05 (upholding riverboat gambling statute that provided for voting by city—rather than by county—for Lake County alone because its "waterfront is covered by substantial cities"). But see Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty., 849 N.E.2d 1131, 1137–38 (Ind. 2006) (striking down statute that allowed certain fraternities to retroactively extend time to file for property tax exemption because nothing separated those fraternities except their failure to timely file); Kimsey, 781 N.E.2d at 694 (striking down annexation statute because neither "the need to preserve rural land around urban areas" nor the need to "prevent[] competing cities . . . from annexing each other's land" was unique). For instance, we upheld a statute providing for additional magistrates to Lake County superior courts, reasoning that as a larger county with a larger docket, it was "ordinary and constitutional" for our legislature to provide such judicial resources, especially since the need was objectively supported by a study comparing caseloads. Williams, 724 N.E.2d at 1086. We also found it significant that the statute was not mandatory; it merely permitted local judges to appoint the magistrates as needed. Id.[7]

---

[7] As is readily apparent, this Court has found Lake County to be unique in several contexts. We wish to emphasize, however, that for this Statute to be constitutionally permissible, a generalized uniqueness is not enough; there must be unique characteristics that justify the particular piece of legislation.

The State argues Lake County is sufficiently distinct in that it has an exceptionally high number of small precincts, which impose significant and unnecessary costs on the election system.[8]  Buncich responds that nearly all of our counties have small precincts, and taxpayers across the state could benefit from cost savings.  We are thus confronted with a question of degree: Lake County is not unique merely because it *has* small precincts, but at what point does the sheer number of small precincts in Lake County become a defining characteristic such that it justifies special legislation?  We find Buncich has not carried his burden of rebutting the presumption that the legislature determined Lake County to be past that point.[9]  Not only does Lake County have the largest number of small precincts in the state, it has more than twice as many as all other counties.[10]  And at the time the Statute was enacted, Lake County had more small precincts than the other seven most populous counties in Indiana combined.[11]  Because the rest of the counties in the state have significantly fewer small precincts,[12] we decline to second-guess the legislature's

---

[8] The State submitted additional data on appeal, concerning patterns of population loss in Lake County, as well as evidence of other counties' efforts to address their own small precincts.  Because this information was never before the trial court, Buncich implores us not to hold a "trial de novo."  Appellee's Br. at 7–8. We need to neither strike that information nor consider it, as we find we can resolve this case based solely on the precinct data submitted by both sides.

[9] The dissent would not defer to the legislature's decision to give specialized attention to the small precincts of Lake County absent record evidence "the legislature made such a finding, not merely that the evidence shows that it could have."  Dissent at 2.  But neither case it relies upon for this proposition actually *requires* findings as to the facts justifying special legislation:  Moseley simply determined that "the legislature decided to permit a particular form of gambling," 643 N.E.2d at 301, and Lake Superior Court found that "legislative action point[ed] to a unique circumstance."  820 N.E.2d at 1249.  Indeed, that there is no requirement for such findings is not surprising given the lack of legislative history in our state and the strong presumption of constitutionality, which mandates resolving all doubts in favor of the legislature.  Zoeller, 19 N.E.3d at 751.  Striking down a statute because of the absence of actual legislative findings would require abandoning that well-settled standard of review.

[10] In March, Lake County had 130 small precincts; the next highest was Allen with 57.  In July, Lake County had 174; Allen, again the next highest, had 81.

[11] Marion, Allen, Hamilton, St. Joseph, Vanderburgh, Porter, and Elkhart Counties *combined* had 129 small precincts, compared to Lake County's 130.

[12] We are aware that the statistical data available for our review comes only from 2014, which the dissent observes is not enough to show "an ongoing and systematic problem."  Dissent at 6.  That may well be.  But

decision not to set up a Small Precinct Committee in counties that don't need it. Moreover, just as in <u>Williams</u>, we note that the Statute does not mandate a solution for Lake County but instead places decision-making authority at the local level, as it is the Board that adopts an order implementing the Committee's findings. Ind. Code § 3-11-1.5-3.4(f).

Admittedly, statistics—these included—may be pliable, but we are "bound to throw the benefit of the doubt in favor of the constitutionality of the law." <u>Moseley</u>, 643 N.E.2d at 300 (quoting <u>Stocking v. State</u>, 7 Ind. 326, 328–29 (1855)). In doing so, we find the abnormal number of small precincts in Lake County is a defining characteristic that is sufficiently distinctive to justify the Statute.[13]

## The Statute Does Not Offend Indiana's Separation of Powers Clause.

Our Constitution provides:

> The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with

---

we are also mindful of the unusual procedural posture of this case: at the preliminary injunction hearing, Buncich—without any notice to the State—moved to consolidate with the merits. The State objected, arguing a merits determination was premature, as any harm was speculative and "there's a lot of analysis that needs to be done regarding the precinct numbers for Lake County and the rest of the State." Tr. at 7. Nevertheless, the court granted Buncich's motion, leaving us with the record we have. At any rate, the State has no burden to show "an ongoing and systemic problem"; quite the contrary, it is Buncich's burden to show there are no justifying characteristics permitting the special legislation.

[13] We acknowledge Justice Rucker's concern over our decision's impact on voting strength in Gary, Indiana, which apparently is home to a large number of the small precincts subject to consolidation. That concern, however, was never raised by the parties. And, in any event, we do not see why preserving Gary's interest in having disproportionately more precincts (and therefore more votes to fill vacancies) as compared to its neighbors should be a reason for us to strike down a statute that otherwise has the result of leveling the playing field among voters.

> official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

Ind. Const. art. 3, § 1. This provision, however, "relates solely to the *state* government and officers charged with duties under one of the separate departments of the *state*"; it does not apply to local officers. Baltimore & Ohio R.R. Co. v. Town of Whiting, 161 Ind. 228, 233, 68 N.E. 266, 268 (1903) (emphasis added); see also State v. Monfort, 723 N.E.2d 407, 414 (Ind. 2000) ("[T]he separation of powers doctrine applies only to state government and its officers, not municipal or local governments."); Willsey v. Newlon, 161 Ind.App. 332, 333, 316 N.E.2d 390, 391 (Ind. Ct. App. 1974) ("It has repeatedly been held that the separation of powers doctrine . . . has no application at the local level."). Thus, the question here is whether the precinct committeepersons at risk of being eliminated perform a state government function. Buncich contends that they do, because there are "certain official duties which only they can fulfill," such as filling vacancies in state legislative offices and circuit court offices, which "directly impact State positions." Appellee's Br. at 14–15 (citing Ind. Code § 3-13-5-1 (2005); Ind. Code §§ 3-13-6-2, -3).

As one of the committeepersons in this case testified, their "duty is to work their precinct" by registering voters, securing and setting up polling locations, hiring poll workers, and generally "working on behalf of their political party." Tr. at 61. They will also—if the need arises—vote on behalf of their party to fill certain vacancies. But putting someone else in the position to perform a state government function is not the same as performing that function oneself. We agree with the State that the "ability to participate in the caucus to fill a vacancy in an elected office is a political privilege to undertake the most political of acts: choosing elected officials." State's Reply Br. at 2. Indeed, our General Assembly has specifically said that precinct committeepersons hold "political party offices" and "are not considered to be elected offices." Ind. Code § 3-5-2-17. Accordingly, we find precinct committeepersons occupy local political party offices and thus fall outside our constitutional provision with respect to the distribution of state governmental power.

## Conclusion

Because Lake County's proportion and number of small precincts is sufficiently exceptional to justify the special application of the Statute, and because the precinct committeepersons are not state officers within the ambit of our separation of powers doctrine, we see no constitutional defect.  We reverse the judgment of the trial court.

Rush, C.J., and Dickson and David, JJ., concur.
Rucker, J., dissents with separate opinion.

**Rucker, J., dissenting.**

This Court has long adhered to the rule that "for a special law to be imposed, it must be reasonably related to inherent characteristics of the territory in which it is applied, and apply equally to those who share those characteristics." Mun. City of S. Bend v. Kimsey, 781 N.E.2d 683, 689 (Ind. 2003); accord Collins v. Day, 644 N.E.2d 72, 78-79 (Ind. 1994). But the Court's opinion today departs from this long-standing requirement instead for an analysis that permits special legislation upon a finding of "unique circumstances" as proffered by the State in defending the challenged legislation. Applying precedent, as we should, I do not believe speculations on what the legislature *could have found* should substitute for actual findings, reflecting inherent characteristics of the affected class. Therefore, I respectfully dissent from the majority's conclusion that the statute at issue is constitutionally permissible.

Although listed in seemingly generally applicable terms, Indiana Code section 3-11-1.5-3.4 only applies to "a county with a board of elections and registration established under IC 3-6-5.2." Ind. Code § 3-11-1.5-3.4(a). And Chapter 3-6-5.2 "applies to a county having a population of more than four hundred thousand (400,000) but less than seven hundred thousand (700,000)." I.C. § 3-6-5.2-1. Simply put, this statute applies only to Lake County.[14] Accordingly, no one disputes that Indiana Code section 3-11-1.5-3.4 is special legislation.[15] And such "special legislation may be constitutional if it is based on *distinct characteristics* of the affected locality." SMDfund, Inc. v. Fort Wayne-Allen Cty. Airport Auth., 831 N.E.2d 725, 731 (Ind. 2005) (emphasis added).

---

[14] Lake County is the only county that fits this criteria.

[15] "Indiana Code Section 3-11-1.5-3.4 is special legislation because it applies only to Lake County and none of Indiana's ninety-one other counties[.]" Br. of Appellant at 12-13; accord Br. of Appellee at 8 ("Lake County is the only county in Indiana which meets this description.").

The State argues that the legislation "is justified by the abnormally large number of small precincts in [Lake] [C]ounty as compared to all others." Br. of Appellant at 9. The State claims: "This uniquely high number of small precincts *likely leads to administrative inefficiencies* and the Lake County election board preliminarily *estimated* that it carried substantial unnecessary financial burdens." Id. at 9-10 (emphasis added). Thus, according to the State: "The General Assembly was justified in enacting special legislation to address this problem that is unique to Lake County." Id. at 10. In like vein, the majority concluded that "Lake County is not sufficiently unique merely because it has small precincts," slip op. at 9 (emphasis omitted), but that "*the abnormal number* of small precincts in Lake County is a defining characteristic that is sufficiently distinctive to justify the statute. Id. at 10 (emphasis added). I do not share in the majority's view, for two reasons.

First, there is nothing to demonstrate that *the legislature* made such a determination. Had the legislature in fact determined that the number of small precincts[16] in Lake County was so significant as to justify the disparate treatment imposed by the statute such a determination would not be binding on this Court but rather entitled to deference. But this is so only if the record supported that the legislature made such a finding, not merely that the evidence shows that it could have. Regarding matters of constitutional proportion such as this, our jurisprudence does not support the majority's assumption that we simply *presume* the legislature did so. In Indiana Gaming Comm'n v. Moseley, 643 N.E.2d 296 (Ind. 1994), for example, we affirmed the special treatment of Lake County pursuant to the statute authorizing riverboat gambling because "the legislature decided to permit a particular form of gambling[,] identified the universe of Indiana counties suitable to host riverboat gambling [and limited] the locations of riverboats to the specified counties [based on the] fact that not every county is home to a suitable body of water ...

---

[16] For the purposes of this appeal, a "Small Precinct" is a "precinct[] within the county [with] fewer than five hundred (500) active voters (as defined in IC 3-11-18.1-2) as of June 1, 2014[.]" I.C. § 3-11-1.5-3.4(e)(1).

2

[and] the distinctions drawn between Lake County and the others fit this purpose of this local law." Id. at 301. In State ex rel. Atty. Gen. v. Lake Super. Ct., 820 N.E.2d 1240 (Ind. 2005), we acknowledged that "administrative findings, judicial findings, and legislative action all point[ed] to a unique circumstance created by uneven assessment practices in various parts of Lake County[,]" such as "the long and tortured history of property taxation in Lake County, described in Matonovich v. State Bd. of Tax Comm'rs, 705 N.E.2d 1093, 1095 (Ind. Tax Ct. 1999) as 'an endemic problem with the uniformity of assessments within classes of property.'" Id. at 1250, 1249. And although we found the statutes in question to be special legislation in violation of Article 4, Section 22, we rejected plaintiffs' Article 4, Section 23 claim because "[w]e [were] directed to *no comparable set of circumstances in any other county* producing such widespread tax inequities and unusual issues of valuation. [Accordingly,] [t]hese conditions readily justif[ied] local legislation to deal with a reassessment problem of a scale and complexity not found elsewhere in the state." Id. at 1250. Conversely, there is no evidence in the record demonstrating that the legislature found the sheer number of Small Precincts in Lake County to be so disproportional to those in other counties or create such a problem of epidemic proportion that it required specialized attention.[17] Other than the State's bare assertions on appeal, there is simply nothing in the record to support that *the legislature* reached such a conclusion.

---

[17] A review of the small precinct totals as submitted by the plaintiffs in this case reveals that small precincts constitute 20.83% of Indiana's precincts with active voters and there are twenty-eight counties with one-third or more small precincts in Indiana. App. at 104-06. While Lake County is the second largest county, it ranks twenty-fifth on the list for the highest percentage of small precincts in the state with only 33.46% of its precincts classified as "small." Id. Ohio and Benton Counties top the list at 81.82% and 80%, respectively. Martin, Clinton, Crawford, Newton, Vermillion, Warren, Pike, Fayette, Union, Davies, Posey, Cass, and Switzerland Counties all have more than 50% small precincts, ranging from 72.22% to 50% respectively. Id. Rush, Perry, Pulaski, Fountain, Miami, Knox, Greene, Whitley, and Jasper Counties also have higher percentages than Lake County, ranging from 47.06% to 34.48% respectively. Id. While there is no dispute that Lake County has more small precincts than any other county in the State, there is also no disputing that Lake County is the second largest county boasting 187 more precincts than all but one of its counterparts in addition to having a higher number of active voters in its total voting precincts. Thus, it should be of no surprise that the state's second largest county would likewise have a larger number of small precincts. Given the variances of population from county to county, in my view the question

3

Second, regarding the record before us I make the following observations. As this Court has previously explained: "Article [4] issues will be simplified if [the specified municipality is identified by name], accompanied by legislative findings as to the facts justifying the legislation's limited territorial application." Kimsey, 781 N.E.2d at 691. It is important to note that the legislature did not identify Lake County in Section 3-11-1.5-3.4, but rather determined that the statute should be applied generally to any county that fits the specified criteria. But here, other than a survey of voter counts, which demonstrates that Lake County had the highest number of Small Precincts in the state as of June 1, 2014, there is nothing to indicate anything inherently characteristic about "a county with a population between four hundred thousand (400,000) and seven hundred thousand (700,000)" to warrant specialized treatment based on the sheer number of Small Precincts. The majority declares: "Because the rest of the counties in the state have significantly fewer small precincts, we decline to second-guess the legislature's decision not to set up a Small Precinct Committee in counties that don't need it." Slip op. at 9-10 (footnote omitted). But whether such committees are needed misses the mark. In analyzing whether such special legislation is constitutionally permissible, we must assess whether there are inherent characteristics to justify the legislation not whether our legislature has determined that there are certain "counties that don't need it."

It is true that when examining a challenge to Article 4, Section 23 "courts place the burden upon the challenger to negative every conceivable basis which might have supported the classification." Collins, 644 N.E.2d at 80[18] (quotation omitted); accord Kimsey, 781 N.E.2d at

_____

relevant to our analysis here should not focus on the mere number of small precincts identified per county. Rather, the issue is whether the percentage of small precincts in Lake County is incongruous to the percentage of small precincts located in every other county throughout the State.

[18] Collins specifically considered a constitutional challenge to the exclusion of agricultural workers under the Indiana Worker's Compensation Statute in violation of Article 1, Section 23. This Court has since applied the formulation expressed in Collins to Article 4, Section 23 claims. See, e.g., Kimsey, 781 N.E.2d at 688-94.

4

694. But "[w]hen this Court in <u>Collins</u> used the phrase 'negative every conceivable basis,' this did not eviscerate the two-prong constitutional test established; rather, it merely emphasized the importance of appropriate legislative deference, especially with regard to legislative classifications." <u>Paul Stieler Enters., Inc. v. City of Evansville</u>, 2 N.E.3d 1269, 1277 (Ind. 2014) (alteration omitted) (quoting <u>Collins</u>, 644 N.E.2d at 80). And here the class is defined as a county with a population between four hundred thousand and seven hundred thousand, not "Lake County" but "the apparent reasons for limiting the application of the statutes in question are not related to population." <u>Lake Super. Ct.</u>, 820 N.E.2d at 1248.

We have declared the test for a constitutionally permissible special law as follows, "for a special law to be imposed, *it must be reasonably related to inherent characteristics of the territory in which it is applied*, and apply equally to those who share those characteristics."[19] <u>Kimsey</u>, 781 N.E.2d at 689 (emphasis added). Thus, the mere presence of unique circumstances may not be sufficient in all instances to establish that special legislation is constitutionally permissible. A finding of "unique circumstances" is only relevant to our determination if such circumstances demonstrate "inherent characteristics of the affected locale." <u>Id.</u> at 692. Otherwise the legislature would be able to circumvent the Section 23 prohibition against special legislation for any locality on the basis of any "unique circumstance" no matter how insignificant or fleeting the circumstance may be. "When <u>Kimsey</u> speaks of a 'class' it does not mean a particular group defined in a particular statute, but rather the broader classification to which the particular group belongs. Were it otherwise, the General Assembly could grant privileges to any group, no matter how small and specialized, by simply drafting legislation that self-defined the 'specified class.' This would produce a situation no different than that prior to the enactment of the 1851 Constitution and render

---

[19] It is certainly true that within the context of assessing a facial challenge to Article 1, Section 11 of our state constitution, "the claimant assumes the burden of demonstrating that there are no set of circumstances under which the statute can be constitutionally applied." <u>Baldwin v. Reagan</u>, 715 N.E.2d 332, 337 (Ind. 1999). Nevertheless, we have not placed such a burden on claimants raising an Article 4, Section 23 claim. I find no reason to do so now.

useless the provisions of Sections 22 and 23." Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cty., 849 N.E.2d 1131, 1136 (Ind. 2006).

There is nothing in the record before us that establishes that low voter counts are an inherent characteristic of "a county with a board of elections and registration" "having a population of more than four hundred thousand (400,000) or less than seven hundred thousand (700,000)" generally speaking or that this is an ongoing and systematic problem plaguing only Lake County specifically. We previously found a statute authorizing a tax exemption to only a few fraternities at Indiana University to be unconstitutional special legislation in part because "there [wa]s nothing supporting the contention that 'education cost[s were] a problem unique to Indiana University students living in Monroe County [nor was there] evidence to suggest that tax years 2000 . . . and 2001 . . . were unique tax years." Pi Kappa Phi Fraternity, 849 N.E.2d at 1138 (quotation omitted). Indeed, the survey in the present case merely reflects one voter counts summary as prepared in 2014, not an ongoing and systematic problem in Lake County as compared to other counties throughout the state. Contrary to the majority view, specialized treatment of the small voter precincts in Lake County is no different than the tax exemption afforded a few fraternities at Indiana University, which we rejected as unconstitutional. Our reasoning in Kimsey has resonance here:

> In this case, several different explanations were offered to justify the subsection's application only in counties of 200,000 to 300,000 population. But these reasons were all couched in terms of characteristics of St. Joseph County, not necessarily those possessed by a county of this population size. . . . But none of these justifications are inherent in the population range and none turn on facts unique to St. Joseph County. Preserving rural land near urban areas or preventing competing annexation by different municipalities may indeed be legitimate concerns, but there is no basis to conclude they are unique to St. Joseph County.

Kimsey, 781 N.E.2d at 694. The same rationale applies in this case. More than half of the voter precincts in over a dozen counties constitute small precincts. And although the State claims on appeal the statute "is justified by Lake County's unique and undesirable status among Indiana

6

counties[,]" Br. of Appellant at 11, there is no direct evidence to support that the legislature determined a county with the highest number of small precincts to be less desirable than the fifteen other counties that are financing more than fifty percent small precincts.

Although not raised by either party, the record reflects the impact today's decision will have on the voting power of those cities affected by the statute's mandatory consolidation.[20] It will be drastically diminished. While this point alone is not dispositive of Buncich's Section 23 claim the disparate impact on the voting power of the citizens in Lake County—Gary in particular—cannot be ignored. It is undeniable that the city of Gary has the most small precincts under review.[21] Of the 174 small precincts in all of Lake County under scrutiny, 57 of those precincts (32.76%) are located in the city of Gary alone, which encompasses 105 precincts in total. Essentially, 54.29% of Gary's precincts will be at risk of consolidation as mandated by Indiana Code section 3-11-1.5-3.4. And although couched as general legislation to identify "the potential savings in the administration of elections resulting from the combination of precincts[,]" I.C. § 3-11-1.5-3.4(e)(3), still we cannot turn a blind eye to the impact this legislation has on a citizen's

-----

[20] Even though the majority accepts the State's position that Section 3-11-1.5-3-4 is discretionary because it "places decision-making authority at the local level," slip op. at 10, the statute expressly requires that "the board of elections and registration *shall: (1) adopt a proposed precinct establishment order implementing the findings of the committee*; and (2) file the proposed order with the election division . . . ." I.C. § 3-11-1.5-3.4(f) (emphasis added). This is unlike the purely discretionary language in Indiana Code section 33-5-29.5-7.1, which we found to be permissible in Williams v. State, 724 N.E.2d 1070, 1086 (2000). See I.C. § 33-5-29.5-7.1 (2000) ("The judges of the criminal division *may* appoint two (2) full-time magistrates under IC 33-4-7 to serve the criminal division. . . . The judges of the civil division *may* appoint two (2) full-time magistrates under IC 33-4-7 to serve the civil division." (emphasis added)) (repealed by P.L.98-2004, SEC.164).

[21] The only other cities in Lake County with ten or more small precincts are Hammond, East Chicago, and Lake Station with thirty, seventeen, and eleven small precincts respectively. Pl's Ex. 1, Vol. 2 at 277-280 (East Chicago), 293-300 (Hammond), 306-308 (Lake Station). Those cities may also be heavily affected by a consolidation plan. Notwithstanding, the city of Gary has as many precincts under scrutiny as these three cities combined.

individual or collective voting capacity.[22] The elimination of these precincts will undeniably diminish the collective voting strength of the city of Gary by reducing the number of votes it may cast when filling legislative, circuit court, or prosecutorial vacancies. Precinct committee persons are charged with filling vacancies in legislative and local offices. I.C. §§ 3-13-1-5; 3-13-1-6; 3-13-5-1; 3-13-11-3.[23] And each committee person is entitled to one vote. I.C. § 3-13-5-4(c). Reducing the number of these officials—possibly in half—directly minimizes the strength of the voters in Gary by reducing the total votes they currently cast in favor of filling candidates or seats for legislative or local vacancies. That is not to say that Gary, or any other city throughout the state, is in any way "entitled" to have a greater influence in the appointment of any official. Nevertheless, when considering the disparate treatment imposed by our state legislature on any one locality we would be remiss to decline to recognize such an impact simply because of the political implications such discussions conjure up.

In sum, the high number of small precincts based on one compilation of voter counts does not constitute the kind of inherent or distinctive characteristics needed to justify the special legislation imposed upon Lake County. And this is especially so considering the impact this legislation will have on voting strength. It is certainly the case "the challenging party must negate every conceivable basis which might have supported the classification [and t]his may be done by presenting evidence establishing the lack of distinct characteristics . . . ." Kimsey, 781 N.E.2d at

---

[22] Even though consolidation of certain precincts may be in compliance with precinct boundary standards that is not to say that the relocation of the eliminated precincts would not indirectly hinder an individual voter's ability to access the polling place. This may also impact voter turnout in this urban area. While public transportation is more readily available in our cities throughout the state, it is not always easily accessible and certainly not available without financial expense. These transportation challenges faced by hard-working voters in our inner cities who do not possess their own means of transportation is no less daunting than those faced by voters in rural environments who are equally challenged in getting to polling places.

[23] See for example Section 3-13-5-1(a), which provides: "A vacancy in a legislative office shall be filled by a caucus comprised of the precinct committeemen from the senate or house district where the vacancy exists who represent the same political party that elected or selected the person who held the vacated seat."

694 (internal quotation omitted).  Here Buncich has met this burden by establishing that small precincts are a pervasive problem in over two dozen counties throughout the state.  Accordingly, I would affirm the trial court's judgment.