On Direct Appeal
MASSA, Justice.
Indiana Code section 3-11-1.5-3.4 created a Small Precinct Committee in Lake County and directed it to identify precincts with fewer than 500 active voters that may be amenable to consolidation, a measure intended to reduce election costs in a county that is home to over 15% of our state’s small precincts. Implementing such a consolidation plan, however, could jeopardize the offices of some precinct committeeper-sons, who brought suit challenging the Statute. We are asked to decide whether this piece of legislation is contrary to our *139 Indiana Constitution. Finding it is neither an impermissible special law nor a violation of our separation of powers doctrine, we determine the Statute is constitutionally sound, and accordingly, we reverse the trial court.
Facts and Procedural History
The Lake County Board of Elections and Registration is a statutorily created body, unique among Indiana’s counties,[1] that is responsible for organizing elections there. Ind.Code § 3-6-5.2-6 (2005). The five-member Board is comprised of the circuit court clerk plus two members of each major political party, appointed by their respective county chairmen. Ind. Code § 3-G-5.2-4. The day-to-day operations are the responsibility of the director and assistant director of the Board, also appointed by the county chairmen. Ind. Code § 3-6-5.2-7.
In March of 2014, the General Assembly enacted Indiana Code section 3-11-1.5-3.4 (Supp.2015) (“the Statute”), which similarly applies only to Lake County.[2] 2014 Ind. Legis. Serv. P.L. 64-2014 (West). The Statute aimed to reduce the cost of election administration by consolidating small precincts, defined as those with 500 active voters or fewer. Ind.Code § 3-11-1.5-3.4(e). At the time of the Statute’s enactment, 130 of Lake County’s 525 precincts qualified as small, more than double that of any other county. Indeed, the next highest number came from Allen County with 57 small precincts out of 338; Marion County had only 19 small precincts of 600.
To address this disparity, the Statute mandated the creation of another body in Lake County, called a “Small Precinct Committee,” consisting of the five Board members plus any other individuals it unanimously appoints. Ind.Code § 3-11-1.5-3.4(c), (d). The Committee was directed to (1) identify the County’s small precincts, (2) determine if any adjoining precincts could be combined consistent with precinct boundary law, and (3) estimate the potential savings that would result from consolidation. Ind.Code § 3-11-1.5-3.4(e). Once the Committee’s work was complete, the Statute provided that the Board would adopt a proposed order “implementing the findings,” which would be filed with the election division and — provided there were no objections — would take effect at the start of 2015. Ind.Code § 3-11-1.5-3.4®, (g).
As required by the Statute, the Board duly created the Small Precinct Committee in June of 2014; it consisted of the five Board members, along with Director Michelle Fajman and Assistant Director Patrick Gabrione. The Committee determined there were 76 small precincts amenable to consolidation, which would save the county around $43,000 per election, $87,000 per election year, and $435,000 over the next five years. Through the course of its study, the Committee also discovered there were some precincts with more than 1200 voters, in violation of state law and in need of being addressed. Of course, consolidation would' mean that some committeepersons could lose their office before their elected term expired.
Before the Board met to act upon the Committee’s plan, the Lake County Democratic Central Committee and five Demo- *140 eratic precinct committeepersons (collectively, “Buncich”) sought declaratory judgment and an injunction, asserting the Statute was unconstitutional as special legislation under Article 4, Section 23 of the Indiana Constitution and violated the separation of powers doctrine recognized in Article 3, Section 1 because certain committeepersons would be subject to removal just months after being elected. The State opposed, arguing any harm was speculative since the Statute merely required formation of a committee and completion of a study; if Buncich objected to the plan eventually adopted by the Board, whatever it may be, he could seek review from the Indiana Election Division.
At the preliminary injunction hearing, without prior notice to the State, Buncich moved to consolidate with the merits of the case. The State objected, stating such a request would be premature, as more statistical analysis may be needed. The trial court reserved a ruling on the motion, wanting to wait and see what evidence would be presented. At the hearing, both sides relied mostly on the same statewide precinct data from July of 2014,[3] which shows that of Lake County’s 520 precincts, 174 of them, or 33.46%, are small precincts. And, of the 5324 precincts statewide, 20.83% are small.
The parties’ respective analyses of those numbers, however, tell two very different stories about Lake County. As Buncich points out, nearly all — 89 of 92 — Indiana counties have small precincts, and presumably, all counties could benefit from reduced election costs. Moreover, Lake County is not alone in its proportion of small precincts: in 27 other counties, small precincts account for 33% or more of the total precincts. The State responds by distinguishing Lake County based on its relative size, indicating it makes sense for smaller, more rural counties to have a larger proportion of small precincts “given the nature of population distribution.” Tr. at 25. But Lake County is a larger, predominantly urban county with “an inordinate number of [small] precincts given its relatively dense population.” App. at 35. More specifically, of the 27 other counties with 33% or more small precincts, all but one have fewer than 40 total precincts; in contrast, Lake County has 520 total precincts, over seven times more than the next highest county in that group.[4] Among the four most populous counties, Lake County has more small precincts than Marion, Allen, and Hamilton combined.[5] And, of all 92 counties, it has more than twice as many small precincts as the next highest county, accounting for over 15% of Indiana’s small precincts.
Buncich also presented evidence at the hearing that the responsibilities of precinct committeepersons include filling vacancies, should they occur, in elected positions. And several precinct committeepersons— who had just been elected in May of 2014 — testified that they are “at risk” of-losing their positions, although the parties stipulated that the Board has not yet made a decision on which precincts are to be consolidated and which committeepersons eliminated. Tr. at 39, 42, 46-48, 50.
After taking the matter under advisement, the trial court granted Buncich’s *141 motion to consolidate a ruling on the merits. Finding nearly all Indiana counties have small precincts and have an interest in consolidating precincts to realize cost savings, the trial court concluded there are “no unique circumstances that rationally justify the application of the Statute solely to Lake County and not to all of Indiana’s remaining 91 counties.” App. at 145. In addition to ruling the Statute violates Article 4, Section 23 as impermissible special legislation, the trial court determined its impact on precinct committeepersons violates separation of powers principles, embodied in Article 3, Section 1.
The State filed this direct appeal, over which this Court has jurisdiction pursuant to Indiana Appellate Rule 4(A)(1)(b).
Standard of Review
We review the constitutionality of an Indiana statute without deferring to the trial court’s ruling. Zoeller v. Sweeney, 19 N.E.3d 749, 751 (Ind.2014). Instead, the statute comes before us afresh, “clothed with the presumption of constitutionality until clearly overcome by a contrary showing.” Id. (quoting Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind.1996)). We resolve all doubts in favor of the legislature, Id.; thus, if there are multiple interpretations, we will choose the path that upholds the statute. Baldwin v. Reagan, 715 N.E.2d 332, 338 (Ind.1999). It is the party seeking to strike down the statute who bears the burden of proof, and that burden is particularly heavy where, as here, he challenges the statute on its face: the claimant must show “no set of circumstances under which the statute can be constitutionally applied.” Id. at 337.

The Statute Is Constitutionally Permissible Special Legislation.

In Indiana, “where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State.” Ind. Const, art. 4, § 23 (emphasis added). The purpose of this provision is to prevent the legislature from providing a benefit to or imposing a burden on one locality and not others, as allowing such practices would encourage logrolling and result in an irregular system of laws. Mun. City of S. Bend v. Kimsey, 781 N.E.2d 683, 685-86 (Ind.2003). Of course, as Article 4, Section 23 implies, while our drafters expressed a preference for general laws, there are cases in which a general law cannot be made applicable statewide. Ind. Gaming Comm’n v. Moseley, 643 N.E.2d 296, 300 (Ind.1994). In instances where a general law would be “inoperative in portions of the state” or “injurious and unjust,” a special local law is necessary. Kimsey, 781 N.E.2d at 692 (quoting Gentile v. State, 29 Ind. 409, 411-12 (1868)). Our Constitution thus requires we engage in two analytical steps: first, we determine whether the law is general or special; second, if it is a general law, we determine whether it is generally applied, and if it is a special law, we determine whether it is constitutionally permissible. Williams v. State, 724 N.E.2d 1070, 1085 (Ind.2000). “If the subject matter of an act is not amenable to a general law of uniform operation throughout the State,” it is constitutionally permissible. Id. at 1085-86.
Both sides agree the Statute here is special because it is directed to Lake County alone.[6] The question we *142 must address, then, is whether the Statute is nevertheless permissible because it cannot “be made applicable,” Ind. Const, art. 4, § 23, since the “relevant traits of the affected area are distinctive such that the law’s application elsewhere has no effect.” Kimsey, 781 N.E.2d at 692. In other words, there exist “inherent characteristics of the affected locale that justify local legislation.” Id. The justifying characteristic need not be connected to the statutorily defined classification, so long as the class affected is limited to those that possess the justifying characteristic. Id. (“Hoovler made clear that a defining characteristic (a population category) that is theoretically unrelated to the justifying characteristic (Superfund liability) is nevertheless permissible if, under the facts as they are at the time of passage, only justified areas are defined into the class.” (citing State v. Hoovler, 668 N.E.2d 1229 (Ind.1996))). In considering this question, we look to “local facts,” id.: “If the affected county reflects unique circumstances that rationally justify the legislation, then a general law is not ‘applicable’ elsewhere and Section 23 is not violated.” State ex rel. Atty. Gen. v. Lake Super. Ct., 820 N.E.2d 1240, 1249 (Ind.2005).
We have, on several occasions, found unique circumstances warranting differential legislative treatment. See, e.g., Lake Super. Ct., 820 N.E.2d at 1250-51 (upholding tax reassessment statute based on “the long history of systematic underassessment in parts of Lake County”); Hoovler, 668 N.E.2d at 1233-35 (upholding statute allowing Tippecanoe County to increase
certain taxes because it was the only county subject to Superfund liability under federal environmental laws); Moseley, 643 N.E.2d at 301-05 (upholding riverboat gambling statute that provided for voting by city — rather than by county — for Lake County alone because its “waterfront is covered by substantial cities”). But see Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty., 849 N.E.2d 1131, 1137-38 (Ind.2006) (striking down statute that allowed certain fraternities to retroactively extend time to file for property tax exemption because nothing separated those fraternities except their failure to timely file); Kimsey, 781 N.E.2d at 694 (striking down annexation statute because neither “the need to preserve rural land around urban areas” nor the need to “prevent!] competing cities ... from annexing each other’s land” was unique). For instance, we upheld a statute providing for additional magistrates to Lake County superior courts, reasoning that as a larger county with a larger docket, it was “ordinary and constitutional” for our legislature to provide such judicial resources, especially since the need was objectively supported by a study comparing caseloads. Williams, 724 N.E.2d at 1086. We also found it significant that the statute was not mandatory; it merely permitted local judges to appoint the magistrates as needed. Id.[7]
The State argues Lake County is sufficiently distinct in that it has an exceptionally high number of small precincts, which impose significant and unnecessary costs on the election system.[8] Buncich *143 responds that nearly all of our counties have small precincts, and taxpayers across the state could benefit from cost savings. We are thus confronted with a question of degree: Lake County is not unique merely because it has small precincts, but at what point does the sheer number of small precincts in Lake County become a defining characteristic such that it justifies special legislation? We find Buncich has not carried his burden of rebutting the presumption that the legislature determined Lake County to be past that point.[9] Not only does Lake County have the largest number of small precincts in the state, it has more than twice as many as all other counties.[10] And at the time the Statute was enacted, Lake County had more small precincts than the other seven most populous counties in Indiana combined.[11] Because the rest of the counties in the state have significantly fewer small precincts,[12] we decline to second-guess the legislature’s decision not to set up a Small Precinct Committee in counties that don’t need it. Moreover, just as in Williams, we note that the Statute does not mandate a solution for Lake County but instead places decision-making authority at the local level, as it is the Board that adopts an order implementing the Committee’s findings. Ind.Code § 3 — 11—1.5—3.4(f).
Admittedly, statistics — these included— may be pliable, but we are “bound to throw the benefit of the doubt in favor of the constitutionality of the law.” Moseley, 643 N.E.2d at 300 (quoting Stocking v. State, 7 Ind. 326, 328-29 (1855)). In doing so, we find the abnormal number of small precincts in Lake County is a defining characteristic that is sufficiently distinctive to justify the Statute.[13]
*144 The Statute Does Not Offend Indiana’s Separation of Powers Clause.
Our Constitution provides:
The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.
Ind. Const, art. 3, § 1. This provision, however, “relates solely to the state government and officers charged with duties under one of the separate departments of the state ”; it does not apply to local officers. Baltimore & Ohio R.R. Co. v. Town of Whiting, 161 Ind. 228, 233, 68 N.E. 266, 268 (1903) (emphasis added); see also State v. Monfort, 723 N.E.2d 407, 414 (Ind.2000) (“[T]he separation of powers doctrine applies only to state government and its officers, not municipal or local governments”); Willsey v. Newlon, 161 Ind.App. 332, 333, 316 N.E.2d 390, 391 (Ind.Ct.App.1974) (“It has repeatedly been held that the separation of powers doctrine ... has no application at the local level.”). Thus, the question here is whether the precinct committeepersons at risk of being eliminated perform a state government function. Buncich contends that they do, because there are “certain official duties which only they can fulfill,” such as filling vacancies in state legislative offices and circuit court offices, which “directly impact State positions.” Appellee’s Br. at 14-15 (citing Ind.Code § 3-13-5-1 (2005); Ind. Code §§ 3-13-6-2, -3).
As one of the committeepersons in this case testified, their “duty is to work their precinct” by registering voters, securing and setting up polling locations, hiring poll workers, and generally “working on behalf of their political party.” Tr. at 61. They will also — if the need arises — vote on behalf of their party to fill certain vacancies. But putting someone else in the position to perform a state government function is not the same as performing that function oneself. We agree with the State that the “ability to participate in the caucus to fill a vacancy in an elected office is a political privilege to undertake the most political of acts: choosing elected officials.” State’s Reply Br. at 2. Indeed, our General Assembly has specifically said that precinct committeepersons hold “political party offices” and “are not considered to be elected offices.” Ind.Code § 3-5-2-17. Accordingly, we find precinct committeepersons occupy local political party offices and thus fall outside our constitutional provision with respect to the distribution of state governmental power.
Conclusion
Because Lake County’s proportion and number of small precincts is sufficiently exceptional to justify the special application of the Statute, and because the precinct committeepersons are not state officers within the ambit of our separation of powers doctrine, we see no constitutional defect. We reverse the judgment of the trial court.
*145 RUSH, C.J., and DICKSON and DAVID, JJ., concur.
RUCKER, J., dissents with separate opinion.

. The statutory chapter creating the Board • applies only to a county with a population between 400,000 and 700,000. Ind.Code § 3-6-5.2-1. Since its enactment in 1993 and to this day, only Lake County falls within that range.

. The Statute applies only to a county that has a board of elections and registration pursuant to Indiana Code chapter 3-Ó-5.2, which of course is limited to Lake County. Ind.Code § 3-11-1.5-3.4(a).

.This second data set was produced just after the primary elections. Due to low participation, many voters became "inactive,” leading to an increased number of small precincts in Lake County and around the state. Oral Arg. at 7:10-8:20.

. The next highest, Kosciusko County, has 23 small precincts out of 69 total precincts.

. Marion has 65 small precincts, Allen 81, and Hamilton 28, compared to Lake County's 174.

. Although at one time our courts accepted a population parameter as indicative of a statute’s general nature, it is now well-settled that if a piece of legislation distinguishes and identifies a locality — whether by name or some other defining unique characteristic — it is a special law. Kimsey, 781 N.E.2d at 692.

. As is readily apparent, this Court has found Lake County to be unique in several contexts. We wish to emphasize, however, that for this Statute to be constitutionally permissible, a generalized uniqueness is not enough; there must be unique characteristics that justify the particular piece of legislation.

. The State submitted additional data on appeal, concerning patterns of population loss in Lake County, as well as evidence of other counties’ efforts to address their own small precincts. Because this information was never before the trial court, Buncich implores us not to hold a “trial de novo.” Appellee’s Br. at 7-8. We need to neither strike that infor *143 mation nor consider it, as we find we can resolve this case based solely on the precinct data submitted by both sides.

. The dissent would not defer to the legislature's decision to give specialized attention to the small precincts of Lake County absent record evidence "the legislature made such a finding, not merely that the evidence shows that it could have.” Dissent at 146. But neither case it relies upon for this proposition actually requires findings as to the facts justifying special legislation: Moseley simply determined that "the legislature decided to permit a particular form of gambling,” 643 N.E.2d at 301, and Lake Superior Court found that "legislative action point[ed] to a unique circumstance.” 820 N.E.2d at 1249. Indeed, that there is no requirement for such findings is not surprising given the lack of legislative history in our state and the strong presumption of constitutionality, which mandates resolving all doubts in favor of the legislature. Zoeller, 19 N.E.3d at 751. Striking down a statute because of the absence of actual legislative findings would require abandoning that well-settled standard of review.

. In March, Lake County had 130 small precincts; the next highest was Allen with 57. In July, Lake County had 174; Allen, again the next highest, had 81.

. Marion, Allen, Hamilton, St. Joseph, Van-derburgh, Porter, and Elkhart Counties combined had 129 small precincts, compared to Lake County’s 130.

. We are aware that the statistical data available for our review comes only from 2014, which the dissent observes is not enough to show "an ongoing and systematic problem.” Dissent at 148. That may well be. But we are also mindful of the unusual procedural posture of this case: at the preliminary injunction hearing, Buncich — without any notice to the State — moved to consolidate with the merits. The State objected, arguing a merits determination was premature, as any harm was speculative and "there’s a lot of analysis that needs to be done regarding the precinct numbers for Lake County and the rest of the State.” Tr. at 7. Nevertheless, the court granted Buncich’s motion, leaving us with the record we have. At any rate, the State has no burden to show "an ongoing and systemic problem”; quite the contrary, it is Buncich’s burden to show there are no justifying characteristics permitting the special legislation.

. We acknowledge Justice Rucker's concern over our decision’s impact on voting strength in Gary, Indiana, which apparently is home to a large number of the small precincts subject to consolidation. That concern, however, was never raised by the parties. And, in any event, we do not see why preserving Gary’s interest in having disproportionately more precincts (and therefore more votes to fill vacancies) as compared to its neighbors should be a reason for us to strike down a statute that otherwise has the result of leveling the playing field among voters.