STATE EX REL. INDIANA REAL ESTATE COMMISSION
*v.* MEIER.

[No. 30,290. Filed May 15, 1963.]

*Edwin K. Steers,* Attorney General, and *Francis M. Hughes,* Deputy Attorney General, for appellant.

*Cooper, Cooper, Cooper & Cox,* of Madison, for appellee.

MYERS, J.—This is an action instituted by appellant, State of Indiana on the Relation of the Indiana Real Estate Commission, against appellee, Cecil Meier, seeking an injunction to prevent him from engaging in

the practice of real estate brokerage without a broker's license. Appellee demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and thereafter appellee filed an answer in admission and denial. The issues thus joined, a trial was held to the court, which entered judgment in favor of appellee, the court finding that the title of the Real Estate License Law of Indiana, being Chapter 44 of the Acts of 1949 of the Indiana General Assembly (Burns' Ind. Stat., 1961 Replacement, §63-2401 *et seq.*), was too narrow to include the selling of real estate at public auction, and therefore that law, in so far as it attempted to regulate auctioneers, was void and of no effect as violating Art. 4, §19, of the Constitution of the State of Indiana. The appeal comes to this court because of the constitutional question presented. Burns' Ind. Stat., 1946 Replacement, §4-214.

The facts in this case are undisputed. Appellee was an auctioneer, who had started in business in 1928 with his father, who also had been an auctioneer since 1904. In 1955 he attempted to obtain a real estate broker's license, but failed the examination. On April 4, 1956, appellee auctioned or "cried" a piece of real estate known as the Cecil Griffin property located on Ind. Highway No. 356 Near Hanover, in Jefferson County, Indiana. He was paid by the seller for his services. Closing of the sale was done at a local bank by an attorney. Appellee was not present at such time. Neither buyer nor seller had any complaints to make about the conduct of the sale.

Appellee testified that in most auctions where real estate is involved, attorneys draw up the deed, mortgages and other papers connected with the transaction, and that all he did was to sell the property, "unless I'm

called for that or something like that." He admitted to making use of an instrument known as a real estate broker's closing contract as a receipt for the highest bidder's down payment. On it were written the terms of sale, showing the gross purchase price, the down payment, and the arrangements made with reference to taxes and encumbrances. The real estate broker's name was clipped off the top of this instrument.

Art. 4, §19, of the Constitution of the State of Indiana, reads as follows:

"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title of the Real Estate License Law of Indiana is as follows:

"An act regulating real estate brokers and real estate salesmen, and prescribing penalties for the violation thereof." Acts of 1949, Ch. 44, p. 129.

Both parties have agreed to the interpretation to be given Art. 4, §19. It was designed primarily for those titles which are narrower than the enactment. *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al.* (1956), 235 Ind. 353, 133 N. E. 2d 848; *Ule* v. *State* (1935), 208 Ind. 255, 194 N. E. 140; *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1913), 179 Ind. 356, 101 N. E. 296. The purpose is to prevent surprise or fraud in the Legislature by means of a provision or provisions in a bill of which the title gave no information to persons who might

be subject to the legislation under consideration. *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al., supra; Crabbs* v. *State* (1923), 193 Ind. 248, 139 N. E. 180; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688. A further purpose of the provision is to prevent a combination of non-related subjects in the same act. *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al., supra; Albert* v. *Milk Control Board of Indiana, supra; Sarlls, City Clerk* v. *State ex rel.* (1929), 201 Ind. 88, 166 N. E. 270.

Appellant argues that any one reading the title of the Real Estate License Act would not be surprised to find a requirement in the act for the licensing of auctioneers. Citing a definition of an auctioneer from Black's Law Dictionary, Fourth Edition, 1951, as being "A person authorized or licensed by law to sell lands or goods of other persons at public auction," together with other similar definitions, appellant claims an "auction" differs from a "sale" only that it more commonly deals with a public sale, while a "sale" is used in connection with a private sale of property. Therefore, the term "real estate salesmen" as used in the title should be taken in its plain, ordinary and usual sense as a generic term to include within its meaning both public and private sellers of real estate. *Booth* v. *State* (1913), 179 Ind. 405, 100 N. E. 563, and *Gribben* v. *City of Franklin* (1911), 175 Ind. 500, 94 N. E. 757, are cited as authority.

It is further argued that appellee's own testimony was to the effect that he did not prepare papers, deeds or mortgages in the final closing of the transaction *unless he was called upon to do so,* and that after an auction sale he filled out a receipt on a real estate broker's form which had been given him. Thus, it is contended that he performed some of the func-

tions usually ascribed to a real estate broker in a private sale. Consequently, appellant says that the title of the act is sufficiently broad to include auctioneers within its purview.

Appellee argues that the act provides for criminal penalties in the event of a breach thereof, accordingly does not fall within the rule of liberal construction as to constitutionality, *Milk Control Board* v. *Pursifull* (1942), 219 Ind. 396, 38 N. E. 2d 246; that by definition and decision, auctioneers have been treated separately in the law of sales; that the legal profession and the public at large suspect no connection between a real estate broker or salesman and an auctioneer.

We are inclined to agree with appellee. The occupation of auctioneer is one that is old and revered and goes back to ancient times. Heroditus gives account of great auctions held throughout Babylon where, at times, parents with daughters lacking in pulchritude sold them in the markets to swains of limited means who wanted a bargain in wives. Long before the time of Christ, fine Arabian steeds were cried from the auction block. During the time of Julius Caesar, auctions were held in the market place to dispose of the prizes of war. From ancient to medieval times, auction sales were used in increasing importance. "Buying at Auction," by O. C. Lightner, 1942, Hobbies Publishing Co., Chicago, Illinois. See Encyclopedia Brittanica, Auctions and Auctioneering.

It has been held by this court that an auctioneer is one who sells property at auction, and where a city ordinance uses the word "auctioneer," pursuant to a statute, giving the city the right to require an auctioneer to procure a license, the word must be taken in its plain, ordinary and usual sense. *City of*

*Goshen* v. *Kern* (1878), 63 Ind. 468. That case goes into detail in defining "auctioneer" as a person who disposes of goods or lands at public sale to the highest bidder. In other words, it pointed out that the term "auctioneer" has a well-defined and known meaning which cannot be limited.

The general distinction between an auctioneer and a broker has been stated to be that the broker can buy and sell, whereas auctioneers can only sell. 7 C. J. S., Auctions and Auctioneers, §1, p. 1240. To emphasize the fact that reasonable persons are not aware that the act contains licensing requirements as to auctioneers, we point out that the index to Burns' Statutes for Indiana refers to auctioneers under the subject heading of "Auctions and Auctioneers" as relating to baby chicks, city's power to regulate and license, decedents' estates, execution sales, impounded animals, and the like. The only reference to the act is the exemption provision in case of sales on behalf of fiduciaries, such as receiver, trustee in bankruptcy, administrator, executor or trustee. Burns' Ind. Stat., 1961 Replacement, §63-2421. No reference is made to the need for auctioneer's license.

In the official Acts of the Indiana General Assembly of 1949, under its topical index, no reference at all is made to any regulations pertaining to auctioneers under that topic, although the Real Estate License Law appears in that volume.

In West's Indiana Law Encyclopedia, Vol. 3, p. 358, under the subject-matter of auctions, no mention is made of licensing provisions for the sale of land, but extensive mention is made of the authority belonging to towns and municipalities to regulate auctioneers.

From the apparent lack of association of real estate brokers and auctioneers in these learned authorities,

we cannot say that ordinary persons who might be. affected by the act would be apprised from its title of the occupation of auctioneer as an included subject.

In *Booth* v. *State, supra,* cited by appellant, it .was held that the use of the word "operator," in the title of an act requiring owners or operators of coal mines and other employers of labor to maintain washhouses, etc., rendered the title broad enough to cover the provision including the superintendent of a coal mine, so that it was not in conflict with the constitutional provision of Art. 4, §19.

In *Gribben* v. *City of Franklin, supra,* also cited by appellant, it was held that the title of an act concerning actions against cities and towns on account of injuries resulting ·from defective "highways" and bridges was broad enough to cover an action for the personal injuries sustained because of a defective "sidewalk," the word "highways" including streets and sidewalks.

We do not think these authorities are comparable to the case at bar, as they involve entirely different situations.

The fact that .appellee testified he did not prepare deeds, mortgages or other papers unless called upon to do so, does not put him in any more of a position of a real estate broker. In fact, it might put him in just the opposite position, as it has been claimed by certain Bar Associations, both in this state and other states, that such actions on the part of a real estate broker constitute the illegal practice of law.

Appellee has assigned as cross-error that the trial court erred in. overruling appellee's demurrer to the complaint. The basis of his demurrer is that the act in question violates Art. 1, §1, of the Indiana Con-

stitution in that it has no relationship to the protection of public health, morals, safety or welfare and is thus void in its entirety.

The overwhelming weight of authority is to the effect that a statute or ordinance requiring a real estate broker to procure a license is a regulatory measure and a proper and reasonable exercise of the police power. Anno., 39 A. L. R. 2d 606.

Judgment affirmed.

Jackson, C. J., and Achor, Arterburn and Landis, JJ., concur.

NOTE.—Reported in 190 N. E. 2d 191.