


FILED

May 30 2025, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

City of Fishers, Indiana; City of Indianapolis, Indiana; City of Evansville, Indiana; and City of Valparaiso, Indiana, on behalf of themselves and all others similarly situated,

*Appellants-Plaintiffs*

v.

Netflix, Inc.; Disney DTC LLC; Hulu, LLC; DIRECTV, LLC; Dish Network Corp; and Dish Network L.L.C.,

*Appellees-Defendants*

and

State of Indiana,

*Appellee-Intervenor*

---

May 30, 2025

Court of Appeals Case No.
24A-PL-1657

The Honorable Christina Klineman, Judge

Trial Court Cause No.
49D01-2008-PL-026436

**Opinion by Judge Felix**
Judges May and Tavitas concur.

**Felix, Judge.**

## Statement of the Case

Four Indiana cities[1] (the "Cities") sued numerous national streaming companies[2] (the "Streaming Companies") for their failure to pay franchise fees, which the Cities alleged the Streaming Companies owed pursuant to Indiana's Video Service Franchises Act (the "VSF Act"). While the case was pending, the Indiana General Assembly amended the VSF Act (the "Amendment") to exempt the Streaming Companies and similar persons from the VSF Act's requirements, and the Amendment was retroactive. Based on the Amendment, the Streaming Companies filed a motion to dismiss the Cities' lawsuit for

---

[1] City of Fishers, Indiana; City of Indianapolis, Indiana; City of Evansville, Indiana; and City of Valparaiso, Indiana.

[2] Netflix, Inc.; Disney DTC LLC; Hulu, LLC; DIRECTV, LLC; Dish Network Corp; and Dish Network L.L.C. Netflix, Disney DTC, Hulu, and DIRECTV (collectively, "Netflix") submitted a joint brief that is hereinafter referred to as "Netflix's Br." Dish Network Corp. and Dish Network L.L.C. (collectively, "Dish") submitted a separate joint brief, hereinafter referred to as "Dish's Br.," in which Dish "adopts by reference Section I of the Argument section of Defendants-Appellees Netflix, Hulu, Disney, and DIRECTV, discussing the constitutionality of" Public Law 236-2023. Dish's Br. at 7 n.2.

failure to state a claim upon which relief could be granted; the trial court granted that motion. The Cities now appeal the dismissal and challenge the constitutionality of the Amendment and the public law of which it was a part:

1. Whether inclusion of the Amendment in Public Law 236-2023 violates Article 4, Section 19 of the Indiana Constitution;
2. Whether the Amendment violates Article 4, Section 22 of the Indiana Constitution; and
3. Whether the Amendment violates Article 4, Section 23 of the Indiana Constitution.

We affirm.[3]

## Facts and Procedural History

### The VSF Act

The VSF Act requires persons that provide video service in Indiana to obtain a franchise from the Indiana Utilities Regulatory Commission and pay franchise fees to each county, municipality, or township in the entity's service area. Ind. Code §§ 8-1-34-1 to -30. In particular, Indiana Code section 8-1-34-16 requires "a person who seeks to provide video service in Indiana after June 30, 2006," to "file with the commission an application for a franchise." I.C. § 8-1-34-16(b).

The VSF Act contains several interrelated defined terms, the definitions of which we provide below and in which we underline the interrelated term. A

---

[3] On April 29, 2025, we held oral argument at Wabash College in Crawfordsville, Indiana. We thank the faculty and staff of the school for their hospitality, the students who attended the oral argument, and all counsel for the quality of their advocacy.

"franchise" is "an initial authorization, or a renewal of an authorization, that . . . authorizes the construction or operation of a <u>video service system</u> in a designated service area in Indiana." I.C. § 8-1-34-4 (emphasis added). A "video service system" is

> a system, consisting of a set of transmission paths and associated signal generation, reception, and control equipment, that is designed to provide <u>video service</u> directly to subscribers within a community. The term includes the:
>
> > (1) optical spectrum wavelengths;
> >
> > (2) bandwidth; or
> >
> > (3) other current or future technological capacity;
>
> used to provide the video service.

*Id.* § 8-1-34-15(a) (emphasis added). "The term does not include a system that transmits video service to subscribers without using any public right-of way." *Id.* § 8-1-34-15(b).

Prior to 2023, "video service" meant

> (1) the transmission to subscribers of <u>video programming</u> and other programming service:
>
> > (A) through facilities located at least in part in a public right-of-way; and

> (B)  without regard to the technology used to deliver the video programming or other programming service; and
>
> (2)  any subscriber interaction required for the selection or use of the video programming or other programming service.

2006 Ind. Acts 1129 (emphasis added), 2006 Ind. Legis. Serv. P.L. 27-2006 § 58 (West) (codified as amended in 2023 at I.C. § 8-1-34-14) (emphasis added). "Video service" did not include "commercial mobile service."[4] *Id.*

[6]  Additionally, "video programming" means "programming <u>provided</u> by, or generally considered comparable to programming provided by, a television broadcast station."  47 U.S.C. § 522(20) (emphasis added); *see* I.C. § 8-1-34-13 (stating "video programming" has the meaning set forth in 47 U.S.C. § 522(20)).  "Provider" means "a person such as, but not limited to, a cable operator, a multichannel multipoint distribution service, a direct broadcast satellite service, or a television receive-only satellite program distributor, who makes available for purchase, by subscribers or customers, multiple channels of video programming."  47 U.S.C. § 522(13); *see* I.C. § 8-1-34-11 (stating "provider" refers to a multichannel video programming distributor as defined in 47 U.S.C. § 522(13)).

---

[4] "[T]he term 'commercial mobile service' means any mobile service . . . that is provided for profit and makes interconnected service available (A) to the public or (B) to such classes of eligible users as to be effectively available to a substantial portion of the public, as specified by regulation by the Commission."  47 U.S.C. § 332(d)(1); *see* 2006 Ind. Acts 1129, 2006 Ind. Legs. Serv. P.L. 27-2006 § 58 (incorporating definition of the term from 47 U.S.C. § 332(d)(1)).

**The Cities' Lawsuit**

In August 2020, the Cities sued the Streaming Companies in a class action lawsuit, claiming the Streaming Companies provide video service in Indiana and were therefore subject to the VSF Act but had not obtained franchises and had not paid franchise fees.[5] In particular, the Cities alleged in relevant part as follows:

> 24. [The Streaming Companies] offer programming that is comparable to that provided by television broadcast stations and other providers of video programming. [The Streaming Companies] transmit that programming directly to subscribers located within the geographic boundaries of Indiana Units.

> 25. Subscribers view [the Streaming Companies]' video programming using devices . . . that have software enabling them to receive [the Streaming Companies]' video programming. When a subscriber wants to watch [the Streaming Companies]' video programming, the companies transmit the video programming to the subscriber via internet protocol and other technologies.

> * * *

---

[5] Indiana Code section 8-1-34-24 generally requires franchise holders to "pay each unit included in the holder's service area . . . a franchise fee," and this payment must be made "not later than forty-five (45) days after the end of each calendar quarter." *Id.* § 8-1-34-24(a). The fee is determined via a formula described in Indiana Code section 8-1-34-23.

29. Netflix, Hulu, and Disney DTC each transmit their video programming to subscribers in Indiana Units through facilities located at least in part in a public right-of-way.

30. Defendants DIRECTV and DISH have transformed their businesses and delivery methods over the last decade to meet the demands of the marketplace, and subscribers now access their services through facilities located at least in part in a public right-of-way.

31. Like traditional cable companies and others offering video service in Indiana who have obtained franchises and paid fees, each of the [Streaming Companies] charges subscribers a fee to access their video programming. [The Streaming Companies] thus earn gross revenues from transmitting video programming to subscribers through facilities located at least in part in a public right-of-way.

32. [The Streaming Companies] have failed to comply with the VSF Act by failing to apply for and obtain a franchise, as required by I.C. § 8-1-34-16, by failing to determine quarterly gross revenues from their transmission of video service under the VSF Act, as required by I.C. § 8-1-34-23, and by failing to pay franchise fees to [the Cities] and other class member Units, as required by I.C. § 8-1-34-24.

Appellants' App. Vol. II at 71–72.

[8] In December 2020, the Streaming Companies filed motions to dismiss the Cities' complaint, arguing the trial court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. In June 2022, the trial court denied those motions. On interlocutory appeal, on June 13, 2023, this court affirmed the trial court's denials, holding the trial

court had subject matter jurisdiction over the Cities' claims; this court declined to address whether the VSF Act applies to the Streaming Companies, especially in light of the Amendment, which had been enacted while the appeal was pending, and instead remanded the case for further proceedings. *Netflix, Inc. v. City of Fishers*, 212 N.E.3d 188, 192–94 (Ind. Ct. App.), *trans. denied*, 221 N.E.3d 1208 (Ind. 2023).

**Public Law 236-2023 and the Amendment**

On May 4, 2023, Indiana Public Law 236-2023 was signed into law. Included in Public Law 236-2023 was the Amendment, which modified the VSF Act's definition of "video service." 2023 Ind. Acts 3806, 2023 Ind. Legis. Serv. P.L. 236-2023 § 123 (West) (codified at I.C. § 8-1-34-14). The Amendment changed Indiana Code section 8-1-34-14 in three critical ways: (1) "video service" now expressly means, in relevant part, the transmission of video programming by a video service provider, I.C. § 8-1-34-14(a); (2) "video service" does *not* include "direct to home satellite service,"[6] *id.* § 8-1-34-14(b)(2), and (3) "video service" does *not* include "video programming accessed via a service that enables users to access content, information, electronic mail, or other services offered over

---

[6] "Direct-to-home satellite service" is "the distribution or broadcasting of programming or services by satellite directly to the subscriber's premises without the use of ground receiving or distribution equipment, except at the subscriber's premises or in the uplink process to the satellite." 47 U.S.C. § 303(v); I.C. 8-1-34-14(b)(2) (incorporating by reference the definition set forth in 47 U.S.C. 303(v))

the Internet, including digital audiovisual works,"[7] *id.* § 8-1-34-14(b)(3). These modifications to the definition of "video service" were made retroactive. 2023 Ind. Acts 3806.

Here is a side-by-side comparison of Indiana Code section 8-1-34-14 before and after the Amendment, with changes shown in bold font:

| Pre-Amendment I.C. § 8-1-34-14 | Post-Amendment I.C. § 8-1-34-14 |
|---|---|
| "Video service" defined<br>(a) As used in this chapter, "video service" means:<br>    (1) the transmission to subscribers of video programming and other programming service:<br>        (A) through facilities located at least in part in a public right-of-way; and<br>        (B) without regard to the technology used to deliver the video programming or other programming service; and<br>    (2) any subscriber interaction required for the selection or use of the video programming or other programming service.<br>(b) The term does not include commercial mobile service (as defined in 47 U.S.C. 332). | "Video service" defined<br>(a) As used in this chapter, "video service" means:<br>    (1) the transmission to subscribers of video programming and other programming service **by a video service provider**:<br>        (A) through facilities located at least in part in a public right-of-way; and<br>        (B) without regard to the technology used to deliver the video programming or other programming service; and<br>    (2) any subscriber interaction required for the selection or use of the video programming or other programming service.<br>(b) The term does not include**:**<br>    **(1)** commercial mobile service (as defined in 47 U.S.C. 332)**;**<br>    **(2) direct to home satellite service (as defined in 47 U.S.C. 303(v)); or** |

---

[7] "'Digital audiovisual works' means a series of related images that, when shown in succession, impart an impression of motion, together with accompanying sounds, if any." I.C. § 6-2.5-1-16.3; *see id.* § 8-1-34-14(b)(3) (incorporating by reference the definition set forth in I.C. § 6-2.5-1-16.3).

| | **(3) video programming accessed via a service that enables users to access content, information, electronic mail, or other services offered over the Internet, including digital audiovisual works (as defined in IC 6-2.5-1-16.3)**. |
|---|---|

## Post-Appeal and Post-Amendment Litigation

On remand, the Streaming Companies again filed motions to dismiss the Cities' complaint, arguing in relevant part that the Cities' complaint failed to state a claim upon which relief could be granted because the Streaming Companies are exempted from the VSF Act's requirements pursuant to the Amendment. The Cities subsequently filed a notice that they intended to challenge the constitutionality of the Amendment and Public Law 236-2023, so the State intervened. The trial court granted the Streaming Companies' motions to dismiss, concluding that the Cities' complaint fails to state a claim upon which relief can be granted because (1) the Amendment and Public Law 236-2023 were constitutional, and (2) the VSF Act does not apply to the Streaming Companies pursuant to the Amendment. This appeal ensued.

# Discussion and Decision

## Standard of Review

The Cities allege the trial court erred by granting the Streaming Companies' motion to dismiss the Cities' complaint pursuant to Indiana Trial Rule 12(B)(6).

Our Supreme Court has explained our standard of review for such a decision as follows:

> Appellate review of a ruling on a Trial Rule 12(B)(6) motion is de novo. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) (citation omitted). Appellate courts do not test the sufficiency of the facts alleged regarding their adequacy to provide recovery but test the sufficiency of whether a legally actionable injury has occurred in a plaintiff's stated factual scenario. *Id.* The appellate court accepts the alleged facts as true, drawing every reasonable inference in favor of the non-moving party. *Id.* An order to dismiss is affirmed when it is "apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*.

*Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 901–02 (Ind. 2024), *reh'g denied* (June 3, 2024).

[13] The Cities contend that their complaint does not fail to state a claim upon which relief may be granted because the Amendment and Public Law 236-2023 are unconstitutional. "We review statutory and constitutional questions de novo." *Morales v. Rust*, 228 N.E.3d 1025, 1033 (Ind. 2024) (citing *City of Hammond v. Herman & Kittle Props., Inc.*, 119 N.E.3d 70, 78 (Ind. 2019)), *reh'g denied* (Apr. 22, 2024), *cert. denied*, 145 S. Ct. 177 (2024). Our Supreme Court

has further explained our standard of review for constitutional questions as follows:

> In addressing [constitutional] arguments, we are mindful that all laws come "before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing." *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013) (quoting *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999)). Thus, the [challenger] bears a high burden to show that [the challenged law] is unconstitutional, and we will resolve any doubts about the law's constitutionality in the Legislature's favor. *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1273 (Ind. 2014).

> When a question arises under our Constitution, we must examine "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions." *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 741 (Ind. 2015) (quoting *Nagy ex rel. Nagy v. Evansville-Vanderburgh Sch. Corp.*, 844 N.E.2d 481, 484 (Ind. 2006)). In undertaking this examination, we treat the language in each provision with "deference, as though every word had been hammered into place." *Meredith*, 984 N.E.2d at 1218. The language is particularly valuable because it "tells us how the voters who approved the Constitution understood it." *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 983 (Ind. 2000).

*Holcomb v. Bray*, 187 N.E.3d 1268, 1277 (Ind. 2022).

[14]     The Cities specifically argue that (1) the inclusion of the Amendment in Public Law 236-2023 violates Article 4, Section 19 of the Indiana Constitution and (2) the Amendment violates the prohibitions against special laws in Article 4, Sections 22 and 23 of the Indiana Constitution. Our analysis proceeds in three

parts: (1) first, we address the Cities' Section 19 challenge; (2) second, we address the Cities' Section 22 and 23 challenges; and (3) third, we address whether the trial court erred in granting the Streaming Companies' motions to dismiss.

## 1. The Inclusion of the Amendment in Public Law 236-2023 Does Not Violate Article 4, Section 19 of the Indiana Constitution

Article 4, Section 19 provides: "An act, except an act for the codification, revision or rearrangement of laws, shall be confined to one subject and matters properly connected therewith." Ind. Const. art. 4, § 19. The purpose of this section is two-fold: (1) "to prevent surprise or fraud in the Legislature by means of a provision or provisions in a bill of which the title gave *no information* to persons who might be subject to the legislation under consideration," and (2) "to prevent a combination of *nonrelated* subjects in the same act." *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 813 (Ind. 2012) (emphases in original) (quoting *State ex rel. Ind. Real Est. Comm'n v. Meier*, 244 Ind. 12, 15–16, 190 N.E.2d 191, 193 (1963)). Thus, the challenged act is valid if (1) "there is any reasonable basis for grouping together in one act various matters of the same nature," and (2) "the public cannot be deceived reasonably thereby." *Id.* (quoting *Stith Petroleum Co. v. Dep't of Audit & Control of Ind.*, 211 Ind. 400, 409, 5 N.E.2d 517, 521 (1937)).

Importantly, we "indulge in a very liberal interpretation rather than a critical and strict construction calculated to defeat the act." *Rokita v. Tully*, 235 N.E.3d 189, 201 (Ind. Ct. App. 2024) (quoting *Dortch v. Lugar*, 255 Ind. 545, 266

N.E.2d 25, 31 (1971), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind. 1994)) (citing *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 214 (1981); *A.B. v. State*, 949 N.E.2d 1204, 1227 (Ind. 2011) (Sullivan, J., concurring in part)), *trans. denied*, 241 N.E.3d 1122 (Ind. 2024). In that same vein, "our inquiry into whether an act violates [Section 19] ends upon review of the final act itself." *Bayh v. Ind. State Bldg. & Constr. Trades Council*, 674 N.E.2d 176, 179 (Ind. 1996) [hereinafter *ISBC Trades Council*]. As our Supreme Court has explained:

> It is settled law in this state that, when an enrolled act is authenticated by the signatures of the presiding officers of the two houses, it will be *conclusively presumed* that the same was enacted in conformity with all the requirements of the Constitution, and that the enrolled bill contains the act as it actually passed, and it is not allowable to look to the journals of the two houses, or to other extrinsic sources, for the purpose of attacking its validity *or the manner of its enactment*.

*Id.* (emphases in original) (quoting *Roeschlein v. Thomas*, 258 Ind. 16, 25, 280 N.E.2d 581, 587 (Ind. 1972)). "This 'enrolled act rule' has a long pedigree and 'rests upon preserving the sanctity of the constitution's principles,'" including the "need to recognize and preserve the independence and separateness of each of the three branches of government and the functions to be performed by them." *Id.* (quoting *Roeschlein*, 258 Ind. at 30, 280 N.E.2d at 590)) (citing Ind. Const. art. 1, § 1).

[17] Public Law 236-2023 is entitled "AN ACT to amend the Indiana Code concerning taxation," 2023 Ind. Acts 3631; it is approximately 309 pages long

and includes 226 sections, *id.* at 3631–940. The bill contains provisions concerning, among other things, procedures and priorities for awarding grants for broadband projects, *id.* at 3631–32; the contracting procedures state educational institutions must use for construction and repair work, *id.* at 3640–41; reassessment plans and procedures for county assessors, *id.* at 3643–45; loans to qualified taxing units in Lake County, *id.* at 3685–88; establishing and duties of property tax assessment boards of appeals, *id.* at 3695–97; reporting requirements for local units that impose a food and beverage tax, *id.* at 3698–99; distributing money in the innkeeper's tax fund, *id.* at 3772–75; property tax levy limits and procedures for school corporations, *id.* at 3830–33; powers and duties of redevelopment commissions, *id.* at 3848–53; and establishing and managing fire territories, *id.* at 3921–27. And, of course, Public Law 236-2023 also includes the Amendment. *Id.* at 3806.

[18]     The Cities argue that there is no reasonable basis for grouping the Amendment together with the other provisions of Public Law 236-2023. The Cities specifically contend that "whether companies are deemed to provide 'video service' in Indiana has nothing to do with taxes," Appellants' Br. at 27—which is the stated purpose of Public Law 236-2023 per its title—and that "[n]o other section of [Public Law 236-2023] has anything to do with video service or franchise fees," *id.* at 25.

[19]     However, as the Cities recognize, in recent years, this court and the Indiana Supreme Court have "taken a laissez-faire approach to determining whether a violation of the single subject requirement has occurred." *Ind. State Teachers*

*Ass'n v. Bd. of Sch. Comm'rs of The City of Indianapolis*, 679 N.E.2d 933, 935 (Ind. Ct. App. 1997) (citing *Dague*, 275 Ind. at 530–32, 418 N.E.2d at 213–15) [hereinafter *ISTA*].  For example, in *Dague v. Piper Aircraft Corp.*, the Indiana Supreme Court dealt with a challenge to Public Law 141 of the Acts of 1978, which was entitled "An Act to Amend I.C. 33 concerning courts and court officers *and product liability*."  418 N.E.2d at 213 (emphasis added).  Public Law 141 contained 28 sections, all of which "revise[d] various sections of Title 33 of the Indiana Code."  *Id.* at 214.  Importantly, the first 27 sections "generally concern[ed] the operation and jurisdiction of the various courts of Indiana" while the last section contained the Product Liability Act.  *Id.*  The *Dague* Court concluded the "broad subject" of Public Law 141 was "the construction, operation and jurisdiction of Indiana courts," so it was not "clearly unreasonable to conclude that the Product Liability Act should fall under that heading."  *Id.* at 214–15.  Furthermore, the *Dague* Court concluded that there was "no basis for finding that some trick was employed to attach the Product Liability Act to the other provisions of the act," and, "[i]n fact, the title of the act specifically mentions" product liability.  *Id.* at 214.  Because the public could not be deceived by the Product Liability Act's location and because there was some rational unity between the Product Liability Act and the rest of Public Law 141's provisions, the *Dague* Court held that the inclusion of the Product Liability Act in Public Law 141 did not contravene Article 4, Section 19.  *Id.* at 215.

[20] Building on our Supreme Court's decision in *Dague*, this court determined in *ISTA* that there was no violation of Article 4, Section 19 when the General Assembly included legislation restricting Indianapolis public school teachers' collective bargaining rights into the state's budget. 679 N.E.2d at 935. In so holding, this court expressly acknowledged that it was "bound to follow" Indiana Supreme Court precedent even though the connection between the collective bargaining restriction and the state budget was "tenuous at best." *Id.*

[21] More recently, in *A.B.*, the Indiana Supreme Court dealt with a challenge to Public Law 182-2009, which was entitled "An Act to amend the Indiana Code concerning State and local administration and to make an appropriation." 949 N.E.2d at 1211–12. Included in Public Law 182-2009 was an amendment to Indiana Code section 31-40-1-2(f), which provided that the Indiana Department of Child Services was not responsible for certain costs associated with out-of-state placements. *Id.* at 1212. The *A.B.* Court determined that the amendment to Indiana Code section 31-40-1-2(f) included in Public Law 182-2009 "relate[d] to appropriations and the state budget," it "relate[d] to the other items in the bill," and its inclusion in Public Law 182-2009 did not violate Article 4, Section 19. *Id.*

[22] In its 2024 decision in *Rokita v. Tully*, this court dealt with a challenge to Public Law 201-2023 entitled "AN ACT to amend the Indiana Code concerning state and local administration and to make an appropriation." 235 N.E.3d at 201. Subsection 9 of that law clarified the Inspector General's duty to issue confidential informal advisory opinions. *Id.* This court determined that the

inclusion of Subsection 9 in Public Law 201-2023 did not violate Article 4, Section 19 because it "has at least some rational connection to P.L. 201-2023's general purpose of efficient state administration and appropriation." *Id.* (citing *ISTA*, 679 N.E.2d at 935–36). This court further explained:

> the provisions of P.L. 201-2023 are no less unrelated than legislation combining the Products Liability Act with amendments to the Indiana Code for courts and court officers. *See Dague*, 418 N.E.2d at 213–15 (upholding constitutionality of such a combination). Therefore, grouping the amendment to Section 4-2-7-3 with the other provisions of P.L. 201-2023 seems reasonable . . . .

235 N.E.3d at 201.

[23] Here, the Amendment has at least some rational connection to Public Law 236-2023's general purpose of taxation. The VSF Act generally imposes a "franchise fee" on all persons that transmit video programming and use a public right-of-way to do so. *See* I.C. §§ 8-1-34-14, -23, -24. Although the VSF Act calls this payment a "franchise fee," *see id.* §§ 8-1-34-23 to -24.5, it produces at least some revenue for the government—namely, the units to which the fee is paid—which is the essential feature of a tax, *see Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564 (2012) (citing *United States v. Kahriger*, 345 U.S. 22, 28, n.4 (1953)); *see also id.* at 563–66 (discussing cases that hold a payment's label is not determinative of its essential character). That is, the "franchise fee" is at least similar in character to a tax, and the General Assembly's decision to address who is obligated to pay under the VSF Act in a bill on taxation is no

less unrelated to the other provisions of Public Law 236-2023 as were the challenged provisions in *Dague*, *ISTA*, *A.B.*, and *Tully* to their respective public laws. We therefore cannot say that the inclusion of the Amendment in Public Law 236-2023 violates Article 4, Section 19 of the Indiana Constitution.

## 2. The Amendment Is General Legislation that Does Not Violate Article 4, Sections 22 and 23 of the Indiana Constitution

[24] Article 4, Section 22 prohibits special laws on specific topics, including special laws "[r]elating to fees or salaries, except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required." Ind. Const. art. 4, § 22. Article 4, Section 23 provides: "In all the cases enumerated in [Article 4, Section 22], and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Ind. Const. art. 4, § 23. When originally enacted, Sections 22 and 23 "sought to curb the spread of special legislation throughout the state," *Herman & Kittle Props.*, 119 N.E.3d at 73, including laws granting divorces and laws imposing or authorizing local taxes for specific projects like building roads or schools, *State ex rel. Atty. Gen. v. Lake Superior Ct.*, 820 N.E.2d 1240, 1249 (Ind. 2005).

[25] Under both Section 22 and Section 23, our analysis begins with determining whether the Amendment is special or general. *See State v. Buncich*, 51 N.E.3d 136, 141 (Ind. 2016); *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 825–26 (Ind. Ct. App. 2019) (citing *Mun. City of S. Bend v. Kimsey*, 781 N.E.2d 683, 690 (Ind. 2003)), *trans. denied*; *Williams v. State*, 724 N.E.2d 1070, 1085 (Ind.

2000). If we conclude the Amendment is a general law, we must then determine whether it is applied generally throughout the State. *See Buncich*, 51 N.E.3d at 141; *City of Gary*, 126 N.E.3d at 826 (citing *Kimsey*, 781 N.E.2d at 690). If we conclude the Amendment is a special law, we must then determine whether it is constitutionally permissible under Section 22 and Section 23. *See Buncich*, 51 N.E.3d at 141; *City of Gary*, 126 N.E.3d at 826 (citing *Kimsey*, 781 N.E.2d at 690); *State v. Hoovler*, 668 N.E.2d 1229, 1233 (Ind. 1996), *reh'g denied*). Said differently, we need not analyze Section 22 or Section 23 if we conclude the Amendment is a general law that applies generally throughout the State. *See Buncich*, 51 N.E.3d at 141; *City of Gary*, 126 N.E.3d at 826 (citing *Kimsey*, 781 N.E.2d at 690).

### a. The Amendment Is a General Law

[26] "A statute is 'general' if it applies 'to all persons or places of a specified class throughout the state.'" *City of Gary*, 126 N.E.3d at 825 (quoting *Kimsey*, 781 N.E.2d at 689). A "class" is not "a particular group defined in a particular statute, but rather the broader classification to which the particular group belongs." *Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty.*, 849 N.E.2d 1131, 1136 (Ind. 2006). "A statute is 'special' if it 'pertains to and affects a particular case, person, place, or thing, as opposed to the general public.'" *City of Gary*, 126 N.E.3d at 825 (quoting *Kimsey*, 781 N.E.2d at 689).

[27] The parties agree that the Amendment does not have a limited geographic scope. But the Cities contend our inquiry should not stop there. In particular, the Cities point to our Supreme Court's 2006 decision in *Alpha Psi Chapter of Pi*

*Kappa Phi Fraternity, Inc. v. Auditor of Monroe County* in which it said, "The mere possibility that a statute can apply outside of the area specified by its terms is not de facto evidence of its status as a 'general' law." 849 N.E.2d at 1136 (citing *Kimsey*, 781 N.E.2d at 691; *Hoovler*, 668 N.E.2d at 1233 n.3). Thus, according to the Cities, our Supreme Court has made clear that "geographic scope is *not* determinative of whether a statute is special." Appellants' Br. at 13 (emphasis in original) (citing *Alpha Psi*, 849 N.E.2d at 1136). We do not read this statement so broadly, and by its own terms, that holding necessarily requires the challenged law to include a geographic limitation. The challenged law in *Alpha Psi* included such a limit—Indiana University, *id.* at 1133–34 (quoting 2003 Ind. Acts 2653)—whereas the Amendment does not include any geographic limitations, *see* I.C. § 8-1-34-14. As such, this particular holding from *Alpha Psi* is inapplicable here.

[28] The Cities also rely on *Alpha Psi* for its holding that "when a later statute singles out a group smaller than [a] previously specified class to receive unique privileges, *the law necessarily becomes special*." Appellants' Br. at 13 (alteration and emphasis in original) (quoting *Alpha Psi*, 849 N.E.2d at 1137). The *Alpha Psi* Court dealt with a challenge to Section 44 of Public Law 256-2003, which "retroactively provided what amounted to a filing extension" for certain property tax exemptions; ultimately, the extension applied to only fraternities at Indiana University, and in effect actually applied to only three of those

fraternities.[8]  849 N.E.2d at 1133–34.  On appeal, the fraternities argued the law was general because it applied to "any property used for a fraternity for students attending Indiana University, [which has campuses] in eight counties throughout the state."  *Id.* at 1136 (alteration in original).  Our Supreme Court rejected this argument and reaffirmed its holding in *Kimsey* that "a statute is general if it applies to all persons or places of a specified class throughout the state."  *Id.* (internal quotation marks omitted) (quoting *Kimsey*, 781 N.E.2d at 689).  The *Alpha Psi* Court clarified that the "class" discussed in *Kimsey* refers to "the broader classification to which the particular group [defined in a particular statute] belongs."  *Id.*  In *Alpha Psi*, the specified class included "at least all property-owning fraternities and sororities, because that is the smallest relevant

---

[8] In relevant part, Section 44 provided:

   (a)  This SECTION applies to property that:

      (1)  is used for a *fraternity for students attending Indiana University*;

      (2)  is owned by a nonprofit corporation that was previously determined by the *auditor of the county* in which the property is located to be eligible to receive a property tax exemption . . .

      (3)  *is not eligible for the property tax exemption . . . for property taxes due and payable in 2001 or 2002 because the nonprofit corporation failed to timely file an application . . . .*

   (b)  . . . [T]he auditor of the county in which the property described in subsection (a) is located shall:

      (1)  waive noncompliance with the timely filing requirement for the exemption application in question; and

      (2)  grant the appropriate exemption.

   (c)  A property tax exemption granted under this SECTION applies to:

      (1)  property taxes first due and payable in 2001; and

      (2)  property taxes first due and payable in 2002.

*Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty.*, 849 N.E.2d 1131, 1133–34 (Ind. 2006) (alterations in original) (emphases added) (quoting 2003 Ind. Acts 2653).

class the legislature has defined by statute as eligible for a property tax exemption." *Id.* (citing I.C. §§ 6-1.1-10-16 to -24). Section 44 was special because it not only excluded "all other groups that ordinarily qualify for exemptions," but it also excluded "fraternities that are not connected with Indiana University." *Id.* at 1137. That is, Section 44 "single[d] out a group smaller than the previously specified class to receive unique privileges." *Id.* The *Alpha Psi* Court also noted that it was "difficult to imagine a piece of legislation more 'special' than Section 44 . . . . Under even the gentlest scrutiny, the statute at issue here is revealed to be special." *Id.*

[29] The Cities urge that the Amendment "does what the special law in *Alpha Psi* did." Appellants' Br. at 14. We cannot agree. First, unlike the challenged law in *Alpha Psi*, the Amendment exempts all persons that are not responsible for transmitting video programming via facilities located at least in part in a public right-of-way; it does not single out only a handful of such persons for this exemption. The Amendment also does not give unique privileges to the Streaming Companies while ignoring all other similarly situated persons as the challenged law did for the fraternities in *Alpha Psi*.

[30] Second, regarding the class regulated by the VSF Act, the Cities argue that the previously specified class is "all companies transmitting video programming to subscribers through facilities located at least in part in a public right-of-way," Appellant's Br. at 14 (citing I.C. §8-1-34-14(a)(1)), and the Amendment carves out an exception for those persons "whose subscribers happen to access the video programming via the Internet," *id.* (emphasis omitted) (citing I.C. § 8-1-

34-14(b)(3)).  By exempting persons whose subscribers access video programming via the internet from the VSF Act, the Cities contend, the Amendment singled out a subset of the previously specified class for special treatment.  Again, we cannot agree.

[31]     The Amendment clarifies that a person is not providing "video service" if that person is not responsible for transmitting video programming, *see* I.C. § 8-1-34-14(a)(1) ("the transmission of video programming and other programming service by a video service provider"); *id.* § 8-1-34-14(b)(3) (excluding content accessed via the internet from "video service"); *id.* § 8-1-34-4 (providing a franchise "authorizes the construction or operation of a video service system"), and if that transmission is not occurring at least in part in a public right-of-way, *see id.* § 8-1-34-14(a)(1)(A) ("through facilities located at least in part in a public right-of-way"); *id.* § 8-1-34-14(b)(2) (excluding direct to home satellite service from "video service").  That is, the VSF Act has always regulated persons that transmit video programming through facilities located at least in part in a public right-of-way.  *Compare* 2006 Ind. Acts 1129, *with* 2023 Ind. Acts 3806.  The Amendment's clarification of the VSF Act's scope in no way narrows its applicability.  To read *Alpha Psi* in the broad manner suggested by the Cities— that any clarification of a statute necessarily entails singling out a group for special treatment—would limit the General Assembly's ability to draw distinctions between broad classes of regulated persons or its ability to clarify the types of persons subject to a particular statute.  We do not read our Supreme Court's decision in *Alpha Psi* so expansively.

[32] Based on the foregoing, the Amendment does not "single out a group smaller than the previously specified class to receive unique privileges." *Alpha Psi*, 849 N.E.2d at 1137. Nor does the Amendment pertain to and affect "a particular case, person, place, or thing, as opposed to the general public.'" *City of Gary*, 126 N.E.3d at 825 (quoting *Kimsey*, 781 N.E.2d at 689). The Amendment is thus a general law.

### b. The Amendment Applies Generally Throughout the State

[33] The parties do not dispute that the Amendment applies generally throughout the State. Therefore, because the Amendment is a general law that applies generally throughout the State, it does not violate Article 4, Sections 22 and 23.

### 3. The Trial Court Did Not Err by Granting the Streaming Companies' Motions to Dismiss the Complaint pursuant to Trial Rule 12(B)(6)

[34] Finally, the Cities do not dispute the applicability of the Amendment to the Streaming Companies. Consequently, the trial court did not err in granting the Streaming Companies' motions to dismiss the Cities' complaint for failure to state a claim upon which relief may be granted.

## Conclusion

[35] In sum, the Amendment's inclusion in Public Law 236-2023 does not violate Article 4, Section 19 of the Indiana Constitution, and the Amendment is a general law that does not violate Article 4, Sections 22 and 23 of the Indiana

Constitution.[9]  We therefore affirm the trial court's decision to grant the Streaming Companies' motions to dismiss the Cities' complaint pursuant to Trial Rule 12(B)(6).

Affirmed.

May, J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANTS

Andrew W. Hull
Michael R. Limrick
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE – DIRECTV, LLC

F. Anthony Paganelli
Anne L. Cowgur
Paganelli Law Group
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE – NETFLIX, INC.

George M. Plews
Joanne R. Sommers
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

Mary Rose Alexander
Robert C. Collins III
Latham & Watkins LLP
Chicago, Illinois

---

[9] Based on these conclusions, we need not address the Streaming Companies' argument that the VSF Act does not apply to them even if the Amendment is unconstitutional.  We also need not address Dish's arguments that the Cities lack legal authority to impose franchise fees under Indiana's Home Rule Act and that the VSF Act, as originally enacted, violates Dish's rights under the First and Fourteenth Amendments of the United States Constitution.

Jean A. Pawlow
Peter E. Davis
Latham & Watkins LLP
Washington, D.C.

Ward A. Penfold
Latham & Watkins LLP
San Francisco, California


ATTORNEY FOR APPELLEES – DISNEY DTC LLC & HULU, LLC

Jason R. Delk
Delk McNally LLP
Muncie, Indiana


ATTORNEYS FOR APPELLEE – DISH NETWORK, L.L.C. & DISH NETWORK CORP.

Offer Korin
Brooke Smith
Stoll Keenon Ogden PLLC
Indianapolis, Indiana

Pantelis Michalopoulos
Matthew R. Friedman
Steptoe LLP
Washington, D.C.

Jared R. Butcher
Berliner Corcoran & Rowe LLP
Washington, D.C.


ATTORNEYS FOR INTERVENOR – STATE OF INDIANA

Theodore E. Rokita
Indiana Attorney General

Sierra Murray
Deputy Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana